# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHARLES TALBERT | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 18-1620 |
| BLANCHE CARNEY, *et al.* | : | |

**KEARNEY, J.**                                                                                                         October 3, 2018

## MEMORANDUM

Charles Talbert is a frequent civil rights litigant in this Court. He challenges state actors in connection with arrests and treatment while incarcerated. He is now suing the Prison Commissioner and two wardens for placing him in administrative segregation as retaliation for his other lawsuits against state actors. We earlier dismissed his *pro se* complaint for failing to allege facts to support his constitutional claims with leave to amend. In his amended complaint, Mr. Talbert barely pleads the Commissioner and two wardens personally knew of this segregation and approved the transfers to retaliate against his First Amendment right to redress grievances through lawsuits. This pleading facially appears speculative but the specific facts will barely suffice on our present standard applied to *pro se* complaints facing a motion to dismiss. In the accompanying Order, we deny the Commissioner's and wardens's Motion to dismiss the First Amendment retaliation and substantive and procedural due process claims subject to discovery but grant their Motion to dismiss a conspiracy claim.

## I. Alleged facts.

Charles Talbert arrived at the Curran-Fromhold Correctional Facility for pretrial detention on October 31, 2017.[1] "Shortly thereafter," unspecified prison officials transferred Mr.

1

Talbert from the prison's intake unit to the general population unit.[2] Just a day later, unspecified prison officials again transferred Mr. Talbert, this time to the Philadelphia Detention Center "under administrative segregation."[3]

Prison officials placed Mr. Talbert in administrative segregation "indefinitely,"[4] "without any notice, hearing, or chance to be removed."[5] Mr. Talbert claims the officials had no legitimate purpose for the transfer; rather, Blanche Carney, Commissioner of the Philadelphia Department of Prisons, Gerald May, Warden of the Curran-Fromhold Correctional Facility, and Terrance Clark, Warden of the Philadelphia Detention Center, placed him in administrative detention to punish him for suing the officials in other lawsuits.[6] As circumstantial evidence of this theory, Mr. Talbert alleges each of the officials "had to approve" of his transfer to administrative segregation, and were also put on notice through his various grievances.[7]

Mr. Talbert alleges the conditions in the administrative segregation placement caused him physical and emotional pain. He could not engage in "outdoor and/or out-of-cell exercise;" could not eat, sleep, shower, or enjoy recreational time in an area free of mice or roach infestation; and could not view Islamic religious material and access a religious teacher of Islam.[8] Mr. Talbert alleges the conditions aggravated a preexisting medical condition, causing him to acquire "severe chronic lower back pain and spasms," and also caused soreness, "suicidal issues[,] post-traumatic stress[,] and major mental anguish."[9] The mice and roaches destroyed his commissary, "costing him hundreds of dollars of financial loss."[10]

## II. Analysis

Mr. Talbert sues Commissioner Carney and Wardens Clark and May seeking compensatory and punitive damages alleging claims for First Amendment retaliation, conspiracy, and deprivation of procedural and substantive due process rights under the Fourteenth

2

Amendment.[11] After careful review, and consistent with our obligation to construe *pro se* pleadings liberally, we grant the Commissioner's and Wardens' motion to dismiss only as to Mr. Talbert's conspiracy claim; Mr. Talbert's remaining claims allege sufficiently plausible claims to proceed to discovery.

### A. Mr. Talbert sufficiently pleads Commissioner Carney's and Wardens May and Clark's involvement in the alleged conduct.

Mr. Talbert does not allege Commissioner Carney or Wardens Clark and May physically escorted him to administrative segregation. He instead sues them as supervisors with authority over various prison functions and actors. The civil rights law, 42 U.S.C. § 1983, does not countenance liability premised solely on an individual's role as a supervisor of subordinate actors, liability known as respondeat superior.[12] To prevail on a civil rights claim, Mr. Talbert must instead show the individual state actor had "personal involvement in the alleged wrongdoing."[13] Mr. Talbert can show personal involvement "through allegations of personal direction or of actual knowledge and acquiescence."[14]

We earlier dismissed Mr. Talbert's complaint because he failed to allege facts about the Commissioner's and Wardens's personal involvement in his transfer.[15] Commissioner Carney and Wardens Clark and May argue we should dismiss Mr. Talbert's amended complaint on the same grounds. Mr. Talbert, however, has amended his complaint alleging Commissioner Carney and Wardens Clark and May each "had to approve" of his transfer from the general population.[16] He also alleges more factual specificity as to when he was transferred.

With these additional alleged facts, we cannot conclude our Court of Appeals' 2005 decision in *Evancho v. Fisher*,[17] compels dismissal here. In *Evancho*, an employee of the Pennsylvania Bureau of Narcotics Investigation and Drug Control sued former Attorney General D. Michael Fisher, alleging state employees transferred her from her job in retaliation for

3

disclosing her management's failure to investigate altered records and missing items.[18] The plaintiff sought to hold Attorney General Fisher liable on the ground "her 'transfer was carried out by underlings reporting directly to the attorney general and/or by the attorney general himself for the explicit purpose of either setting [her] up for dismissal or, it [sic] that were not successful, making her work life so miserable as to force her resignation.'"[19] The district court dismissed the employee's claims.

Our Court of Appeals affirmed the dismissal holding such speculation did not sufficiently allege personal involvement. The complaint did not allege specific details, such as the "time, place, and persons responsible," or provide "facts indicating that Attorney General Fisher personally directed her transfer."[20] Nor did the complaint "contain even a remote suggestion that Attorney General Fisher had contemporaneous, personal knowledge of her transfer and acquiesced in it."[21] Also material to our Court of Appeals' analysis is the numerous levels of review separating then-Attorney General Fisher from any such personnel decision.[22]

Construed liberally, Mr. Talbert amended his complaint with sufficient details of personal involvement to proceed to discovery. Mr. Talbert alleges Commissioner Carney and Wardens Clark and May reviewed and approved his transfer from the general population to administrative segregation.[23] This level of personal acquiescence is not present in *Evancho*. And while we have little doubt Commissioner Carney and Wardens Clark and May can present evidence of the prisons' management structure at summary judgment, we cannot now conclude Mr. Talbert's allegations are implausible, as it is quite possible these officials exercised direct supervisory authority over and involvement in certain inmate transfers.

4

## B.     Mr. Talbert barely pleads a First Amendment retaliation claim.

Commissioner Carney and Wardens Clark and May move to dismiss Mr. Talbert's retaliation claim. The officials, citing few cases, argue Mr. Talbert has not alleged "facts from which the Court could plausibly infer he was, or reasonably would have been, deterred in exercising his First Amendment rights."[24] Mr. Talbert, however, has cured the pleading deficiencies in his complaint with sufficient facts showing relief is plausible.

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."[25]

Our Court of Appeals' decision in *Mitchell v. Horn*[26] applying this standard in the prison context counsels against dismissal of Mr. Talbert's retaliation claim. In *Mitchell*, our Court of Appeals considered an inmate's complaint alleging a prison officer planted contraband under his locker, causing his transfer to disciplinary confinement, in retaliation for filing complaints against the officer.[27] The district court dismissed the inmate's relation claim, but our Court of Appeals reversed, finding: (1) the inmate's allegation of retaliation "implicates conduct protected by the First Amendment," (2) "several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights," and (3) "the word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him."[28] Our Court of Appeals emphasized "our charge to construe *pro se* complaints nonrestrictively," even when "we would prefer that [the litigant's] complaint be more detailed."[29]

5

Mindful of this charge, and finding *Mitchell*'s discussion of retaliation in the prison environment relevant, Mr. Talbert's claim may proceed to discovery. Mr. Talbert alleges he sued the prison officials in numerous other cases.[30] Commissioner Carney and Wardens Clark and May's motion identifies numerous lawsuits filed by Mr. Talbert.[31] Mr. Talbert plausibly alleges he engaged in protected First Amendment activity of which the officials could have been aware. He alleges Commissioner Carney and Wardens May and Clark personally approved him being placed in administrative detention "indefinitely," and without any "chance to be removed from administrative segregation."[32] The conditions of the placement caused him to suffer physical and emotional pain. These parallels to *Mitchell* compel us to find Mr. Talbert states a plausible retaliation claim subject to discovery.

### C. Mr. Talbert's conclusory allegations of "conspiracy" do not plead a claim.

Commissioner Carney and Wardens Clark and May move to dismiss Mr. Talbert's conspiracy claim, arguing he failed to cure the pleading deficiencies in this claim with details as to "when, how, or where this conspiracy was devised."[33] We dismissed Mr. Talbert's previous complaint because Mr. Talbert alleged a conspiracy in a single conclusory sentence lacking requisite detail from which we could conclude relief is plausible.[34] We must again dismiss this claim for failing to add any details from which we can conclude relief is plausible.

"In order to state a claim for conspiracy under section 1983, 'a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'"[35] It is essential a plaintiff make "[s]pecific allegations of an agreement to carry out the alleged chain of events."[36] "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism."[37]

6

Mr. Talbert has failed to expand his complaint to include any details as to an alleged conspiracy. He alleges the existence of a conspiracy based only on "Defendants[] being in charge of [ ] the administration" of the prisons "with final authority" over his placement.[38] This is insufficient to allege the type of agreement necessary to constitute a conspiracy.

### D. Mr. Talbert pleads plausible procedural and substantive due process claims.

Commissioner Carney and Wardens Clark and May move to dismiss Mr. Talbert's procedural due process claim. Mr. Talbert alleges prison officials placed him in administrative segregation "indefinitely,"[39] and "without any notice, hearing, or chance to be removed."[40] Mr. Talbert alleges a plausible due process claim. Our Court of Appeals in *Stevenson v. Carroll*[41] explained pretrial detainees retain certain due process rights. "Prison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond."[42] Judge Pappert applied *Stevenson* in *Dewald v. Jenkins*, in which a pretrial detainee "allege[d] that he received no notice of his alleged misconduct; no written statement of the reasons for his discipline; [ ] no opportunity to be heard," and "was never informed how long he was to be held in administrative segregation."[43] Judge Pappert denied the motion to dismiss, finding the inmate's allegations sufficient. We reach the same conclusion here, as Mr. Talbert alleges he received no explanation or opportunity to respond.

Mr. Talbert also appears to allege his placement in administrative segregation—in which the prison officials allegedly denied him access to clean facilities and access to religious instruction—was not imposed for a legitimate, non-punitive reason, and thus violated his due process rights under the Fourteenth Amendment.[44] "[I]n *Bell v. Wolfish*, the Supreme Court established the principle that 'under the Due Process Clause, a detainee may not be punished

7

prior to an adjudication of guilt in accordance with due process of law.'"[45] A pretrial detainee can prevail on a substantive due process claim of punishment if he shows either (1) "an expressed intent to punish on the part of detention facility officials," or (2) absent such an expressed intent, the facility officials imposed a condition "not reasonably related to a legitimate goal."[46] Our Court of Appeals emphasized in *Stevenson* such an inquiry "includes both objective and subjective components," and assessing the severity of the deprivation and the officials' mental state is rarely possible at the motion to dismiss stage.[47]

This difficulty is heightened here, as Mr. Talbert's central claim concerns the officials' allegedly improper motive in transferring him to administrative segregation. We draw support again from Judge Pappert's decision in *Dewald v. Jenkins*. In *Dewald*, prison officials did not allow the inmate back into his cell to use the toilet, and did not permit him to use any toilet, so he was forced to defacate on a bench in the video court cell where he was slated to speak with his attorney.[48] The inmate alleged the officials' denial of his right to use a toilet amounted to cruel and unusual punishment under the Eighth Amendment. Judge Pappert considered the claim instead under the Fourteenth Amendment's due process clause, which "protects pretrial detainees from being punished *at all*."[49] Judge Pappert denied the defendants' motion to dismiss this claim. Acknowledging the inmate did "not allege that he was denied a restroom as punishment for his crime," Judge Pappert found the inmate nonetheless alleged "because the corrections officers were waiting for the other prisoners to get ready anyway, they lacked a rational, non-punitive reason not to permit him to reenter his cell and use the toilet."[50] Judge Pappert emphasized the motion to dismiss is not a proper vehicle for conducting an inquiry into the legitimacy of the government's objectives.[51]

8

As Judge Pappert found in *Dewald*, we cannot absent an evidentiary record determine whether the restrictions the officials imposed on Mr. Talbert furthered a legitimate objective. Mr. Talbert alleges the officials "intentionally and maliciously" placed him in administrative segregation to punish him for various lawsuits.[52] Commissioner Carney and Wardens Clark and May will have a full opportunity to challenge the fact basis for Mr. Talbert's allegation of a punitive and retaliatory purpose.

### III. Conclusion

We grant Defendants' motion to dismiss only as to Mr. Talbert's conspiracy claim. Mr. Talbert's remaining damages claims for First Amendment retaliation and procedural and substantive due process violations may proceed to discovery.[53]

---

[1] Amended Complaint, ECF Doc. No. 23, at ¶¶ 1, 5.

[2] *Id.* at ¶ 6.

[3] *Id.* at ¶¶ 4, 7.

[4] *Id.* at ¶¶ 11, 14.

[5] *Id.* at ¶ 9.

[6] *Id.* at ¶¶ 1–4, 8–12.

[7] *Id.* at ¶ 8.

[8] *Id.* at ¶ 14.

[9] *Id.* at ¶ 15.

[10] *Id.* at ¶ 16.

[11] We granted the Commissioner's and Wardens's Motion to dismiss Mr. Talbert's complaint on July 20, 2018, but granted Mr. Talbert leave to amend, acknowledging more concrete factual allegations could potentially plead a claim. *See* ECF Doc. No. 20. Mr. Talbert filed an amended

9

complaint *pro se* on August 7, 2018, and Commissioner Carney and Wardens May and Clark move to dismiss again.

[12] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

[13] *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[14] *Id.* (quoting *Rode*, 845 F.2d at 1207).

[15] *See* ECF Doc. No. 20, at 3 ("There are no allegations of conduct taken by the officers, much less allegations of personal direction or actual knowledge and acquiescence to any of the alleged deprivations.").

[16] ECF Doc. No. 23, at ¶ 8.

[17] 423 F.3d 347 (3d Cir. 2005); *see* ECF Doc. No. 25, at 8–9 (arguing *Evancho* requires dismissal).

[18] *Evancho*, 423 F.3d at 349.

[19] *Id.* at 349–50 (quoting operative complaint).

[20] *Id.* at 353.

[21] *Id.*

[22] *Id.* at 354 ("Given th[e] hierarchy, the decision to transfer [the plaintiff] presumably was made by mid-level management officials within the Bureau itself. It is unlikely that her transfer even involved persons at the level of the Criminal Investigations Unit, one step above the Bureau, let alone an 'underling' of the Attorney General or the Attorney General Fisher personally.").

[23] ECF Doc. No. 23, at ¶ 9.

[24] ECF Doc. No. 25, at 10.

[25] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citation, internal quotation marks, and alteration omitted).

[26] 318 F.3d 523 (3d Cir. 2003).

[27] *Id.* at 527–28.

[28] *Id.* at 530.

[29] *Id.*

[30] ECF Doc. No. 23, at ¶ 12.

[31] *See* ECF Doc. No. 25, at 2–4.

[32] ECF Doc. No. 23, at ¶ 9.

[33] ECF Doc. No. 25, at 10.

[34] ECF Doc. No. 20, at 3–4.

[35] *Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)).

[36] *Id.* at 648; *see also id.* at 647 ("A plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights.").

[37] *Id.* at 648 (quoting *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)).

[38] ECF Doc. No. 23, at ¶ 13.

[39] *Id.* at ¶¶ 11, 14.

[40] *Id.* at ¶ 9.

[41] 495 F.3d 62 (3d Cir. 2007).

[42] *Id.* at 70.

[43] *Dewald v. Jenkins*, No. 16-04597, 2017 WL 1364673, at *5 (E.D. Pa. Apr. 13, 2017).

[44] *See id.*, at *4 (construing claim "Defendants violated his constitutional rights by depriving him of recreation and shower time" as a substantive due process claim).

[45] *Stevenson*, 495 F.3d at 67 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)).

[46] *Id.* (quoting *Bell*, 441 U.S. at 538, 539).

[47] *Id.* at 68.

[48] *Dewald*, 2017 WL 1364673, at *1–2.

[49] *Id.* at *4.

[50] *Id.*

[51] *Id.*

[52] ECF Doc. No. 23, at ¶ 10.

[53] We deny the Commissioner's and Wardens's request to revoke Mr. Talbert's *in forma pauperis* status in this case.