IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 18-1620** |
| | : | |
| **BLANCHE CARNEY,** *et al.* | : | |
| | | |
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 18-5112** |
| | : | |
| **CORRECTIONAL DENTAL** | : | |
| **ASSOCIATES,** *et al.* | : | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**KEARNEY, J.**                                                                                      **June 7, 2019**

Serial *pro se* prisoner litigant Charles Talbert sues prison officials for not providing him with two medical prescriptions and sufficient recreation time outside while he is in administrative segregation. Finding questions of fact raised by Mr. Talbert's allegations, we held a preliminary injunction hearing. After evaluating the credibility of testimony from Charles Talbert, Physician Assistant Shellenberger and Dr. Kram as the Medical Site Director, and evaluating the medical records, we enter Findings of Fact and Conclusions of Law in two cases raising the same issue to support our Orders denying Mr. Talbert's motions for injunctive relief (ECF Doc. No. 77 (*Talbert v. Carney, et al.*) and No. 37 (*Talbert v. Correctional Dental Associates et. al*)):

    1.    Mr. Talbert entered Curran-Fromhold Correctional Facility on October 31, 2017.

2. The Facility has housed Mr. Talbert in administrative segregation since April 19, 2019. While on administrative segregation, he must await the distribution of prescriptions to him and is limited to one hour of daily exercise.

3. Mr. Talbert claims he suffers back spasms, insomnia, anxiety and bowel issues.

4. Mr. Talbert challenges his limited recreation time in restraints for one hour a day.

5. Mr. Talbert seeks a low cholesterol diet.

6. He claims if he "was on the street", he would get his medicine, exercise and better diet.

7. Before and after his incarceration, doctors and medical professionals prescribed Flexeril, a muscle relaxant to address back spasms, and Imodium to address lower bowel disorder arising from surgery several years ago.

8. The only competent evidence of medical need adduced at our hearing confirmed each of these prescriptions is on an as-needed basis; neither are automatically renewed. A Physician Assistant and the Medical Site Director for the Facility specifically addressed Mr. Talbert's claim of a need for Imodium and Flexeril. Both explained, without challenge, these prescriptions are on an as-needed basis and cannot be provided on an automatic renewal.

9. Mr. Talbert presented to the Physician Assistant without pain. She did not prescribe him Flexeril since he could not articulate pain.

10. While Mr. Talbert claims the medical professionals denied him Flexeril because of an argument he had with Physician Assistant Shellenberger, there is no evidence her decision to stop the Flexeril prescription is in any way retaliatory.

11. The Facility prescribed Imodium for Mr. Talbert through March 27, 2019.

12. The medical professionals testified Imodium only treats the symptoms and not the condition. They must balance the prescription with a risk of constipation. They made a medical decision to provide the Imodium as-needed.

13. As recently as April 16, 2019, medical officers renewed Mr. Talbert's prescription for Imodium through April 30, 2019.

14. Mr. Talbert has not received his Imodium because he is presently in administrative segregation and must await Nurse Assistant Horn to provide this medicine to him when walking around the unit with a medical cart.

15. For reasons not explained by Mr. Talbert, Nurse Assistant Horn does not notify him of the Imodium and, while we are unaware as to why not, neither the prison officials nor the medical professionals are denying him Imodium when necessary.

16. Mr. Talbert timely filed a sick call for May 3, 2019 but then, as confirmed in the medical records, Mr. Talbert did not appear for a sick call and did not receive the Imodium.

17. We do not doubt Mr. Talbert may face back spasms from time to time requiring a muscle relaxant. If he does, he must attend to a sick call and obtain a medical doctor's prescription.

18. Based on the adduced evidence, we cannot today find the medical doctor's hesitancy to provide an automatic renewal of Flexeril or Imodium is deliberative indifference towards Mr. Talbert under the Eighth Amendment.

19. Mr. Talbert also claims prison officials are denying him his Eighth Amendment rights by placing him in restraints during his one hour of daily recreation/exercise time.

20. Mr. Talbert is on administrative segregation necessary for the safety and security of the prison population, co-inmates and staff.

21. Mr. Talbert testified, without challenge, of only being provided one hour of outside activity.

22. Upon further review of the law and given Mr. Talbert is presently in administrative segregation, Pennsylvania requires one hour of recreation time. 37 Pa.Code § 95.238 ("Inmates under disciplinary status or segregation shall receive 1 hour of outdoor activity 5 days a week.")

23. The Facility provides Mr. Talbert at least one hour of daily physical exercise consistent with Pennsylvania Law while he is on administrative segregation.

24. But even should we find he has not presently received two hours of exercise, his claim would relate to damages and we see no imminent irreparable harm caused by possibly losing an hour of exercise each day.

25. Mr. Talbert claims the limited exercise in restraints affects his heightened cholesterol level resulting in a test earlier this year with a cholesterol level of 231.

26. The medical doctor confirmed this cholesterol level as higher than the recommended range of 200 but found it does not threaten death or serious injury in and of itself.

27. Mr. Talbert can offer no evidence of his lack of exercise while he is on administrative segregation as causing him imminent medical injury.

## Conclusions of Law

28. Mr. Talbert failed to show a likelihood of success on the merits.

29. Mr. Talbert specifically failed to show how either the prison doctors or the prison officials acted with deliberative indifference towards his medical needs or otherwise affected his Eighth Amendment rights as of May 31, 2019.

30. The evidence, at best for him, suggest his challenge to medical decision making. In fact, during one series of questioning, Mr. Talbert repeatedly inquired as to whether other doctors would disagree with the delivery of his medical prescriptions. His questioning confirms he is challenging the wisdom of decision making and not necessarily showing deliberative indifference simply because medical doctors have not prescribed him Flexeril or Imodium on an ongoing renewal basis when he did not to appear for sick calls or otherwise work with Nurse Horn to confirm his Imodium delivery.

31. Mr. Talbert does not have a constitutional right to a low cholesterol diet or the exercise and medication he could receive "on the street."

32. Mr. Talbert also failed to show any imminent irreparable harm. While we recognize the deprivation of a constitutional right creates imminent harm, we have no evidence of constitutional harm. There is no evidence of an Eighth Amendment violation.

33. In balancing the equities, we find in favor of the prison doctors and prison officials.

34. Mr. Talbert failed to meet his burden of showing a likelihood of success on the merits, an irreparable injury if not granted immediate change of status quo, the limited possibility of harm to other persons from granting the injunction, or how the public interest would be fostered by compelling Facility doctors or officials to provide outdoor recreation time, better diet, or an automatic renewable prescription of drugs which are prescribed on an as-needed basis to Mr. Talbert.