## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHARLES TALBERT | : CIVIL ACTION |
|---|---|
| | : |
| v. | : NO. 18-1620 |
| | : |
| BLANCHE CARNEY, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **July 1, 2019**

Prisoners unable to pay lawyers to represent them in civil rights claims may ask us to refer their case to a volunteer panel of lawyers who carefully review cases placed on our Court's website and often undertake the representation. Congress affords judges the discretion to ask lawyers to represent prisoners in civil rights cases particularly when the plead facts evidence some merit. In *Houser v. Folino*,[1] our Court of Appeals most recently addressed our discretion in affirming a district court judge's denial of appointment of counsel for a prisoner civil rights litigant. Applying our Court of Appeals' recent guidance and mindful of this prisoner's background and extensive experience, we today deny his request for counsel after he swore he could and would represent himself moving forward when his retained counsel sought to withdraw. Our review must also account for this prisoner's serial filing of dozens of civil rights cases in this Court over the past few years without counsel. While we dismissed many of his cases, he demonstrated skill and understanding of civil rights laws and procedure. He candidly swears he knows more than the lawyers but seeks counsel solely to fund his discovery. He wants a lender, not a lawyer. After applying our discretion to the totality of the circumstances, particularly where the prisoner swore he did not need counsel a few weeks ago except as to fund his discovery, we decline to refer this case to our volunteer panel of attorneys to serve as funding agents for his discovery.

## I.    Background

### A.    Alleged *pro se* facts.

Charles Talbert arrived at the Curran-Fromhold Correctional Facility ("CFCF") for pretrial detention on October 31, 2017.[2]  After "a few days" of housing Mr. Talbert in CFCF, Warden Gerald May and Prison Commissioner Blanche Carney approved Mr. Talbert's transfer to the Philadelphia Detention Center.[3]  Upon arrival, Warden Terrance Clark and Commissioner Carney "reviewed and approved" the decision to leave Mr. Talbert in administrative segregation indefinitely.[4]    Mr. Talbert remained in administrative segregation "indefinitely[] with no explanation as to why he was there under that status."[5]

Mr. Talbert alleges the conditions of administrative segregation caused him physical and emotional pain.  He could not engage in "out-of-cell[] and outdoor exercise;" could not eat, sleep, shower, or enjoy recreational time in an area free of mice or roach infestation; and could not enjoy the same "access to Islamic literature[] and [an] Emam[] that Christians had to Chaplains and Bibles."[6]  Mr. Talbert alleges these conditions aggravated a preexisting medical condition, causing him to suffer "chronic lower back pain and spasms," post-traumatic stress, mental anguish, and emotional distress, which placed him on suicide watch.[7]   Mr. Talbert's time in administrative segregation ended upon his March 2, 2018 discharge from prison.[8]

He filed this suit on April 18, 2018.  We dismissed his complaint and he then filed an amended complaint. Defendants moved to dismiss the amended complaint.  He moved for my recusal arguing my experience in his other cases rendered me incapable of impartially resolving this case. Specifically, "… you are bias toward my *pro se* status and that, for some reason,  you hate the fact that I never went to law school and as a "half-black" and "half-german" man, I have demonstrated that I can go into your courtroom, or any other courtroom for that matter, and proceed

2

without any legal aid or advice."[9]  We denied his motion for recusal.[10]  We later granted in part, and denied in part, Defendants' motion to dismiss the amended complaint.[11] Attorney J. Michael Considine, Jr. entered his appearance for Mr. Talbert on December 28, 2019.[12]

Mr. Talbert returned to CFCF on January 9, 2019. [13]

## B.    Mr. Talbert consents to Attorney Considine's withdrawal and now proceeds before us and our Court of Appeals.

On March 16, 2019, Mr. Talbert requested Attorney Considine withdraw because he "does not need Considine to represent him." [14]  On March 27, 2019, Mr. Talbert filed an "Emergency Motion for Appointment of Counsel and/or Pretrial Conference.[15]  Mr. Talbert's March 27, 2019 filing requested we schedule a pretrial conference.  Mr. Talbert subsequently apologized in his "Motion to Apologize for Motion to Withdraw," requesting we "[k]indly[] continue to have Mr. Considine as [his] counsel!"[16]  Mr. Talbert described Attorney Considine as "a very honorable man, and great counsel."[17]  On April 18, 2019, however, Attorney Considine moved to withdraw.[18]

We held a scheduling conference on April 25, 2019, during which we addressed Attorney's Considine's request to withdraw.[19]  Mr. Talbert admitted he only wanted counsel to fund his deposition expenses.[20]   According to Mr. Talbert, the only significant difference between appointed counsel and himself is "the financial means to do depositions."[21]   Mr. Talbert emphasized his extensive legal work in the case, as well as his previous trial and appellate litigation experience in this Circuit.[22]  He admitted "I know how to go forward the only this is that prevents me going forward is lawyers have financial means to do depositions... I know the law and I know what equals to the complaint that I'm bringing."[23]  With Mr. Talbert's consent,[24] we granted Attorney Considine's request to withdraw as Mr. Talbert's attorney.[25]

Mr. Talbert then filed an amended complaint.  He now claims Lieutenant Muhollan "established and maintained[] a campaign of harassment[] in retaliation [for him] filing a slew of

3

lawsuits against the PDP."[26] Mr. Talbert alleges Lt. Muhollan called Mr. Talbert a "jailhouse snitch," threatened him "with serious bodily injury," "called [Mr. Talbert] a 'nigger,'" and made false statements against Mr. Talbert in a prison misconduct citation or proceeding.[27] These false statements "arouse[d] ill-feelings between [Mr. Talbert] and other CFCF staff members."[28]

He also now claims on February 20, 2019, Correctional Officer S. Ford began to harass Mr. Talbert in retaliation for him filing a lawsuit against Prison Commissioner Blanche Carney.[29] Between February 20 and February 27, 2019, Officer Ford told other inmates of Mr. Talbert's unit Mr. Talbert "was a jailhouse snitch, and needed stitches."[30] Some point after February 27, 2019, inmate Zhyare Knox informed Mr. Talbert about Officer Ford's desire to have him assaulted.[31] Mr. Talbert then left his cell to call his then-attorney.[32] During his phone conversation with his attorney, Mr. Talbert observed inmate Knox speaking with Officer Ford; both Knox and Ford "looked over at [Mr. Talbert] aggressively."[33] Inmate Knox then "snuck up and sucker-punched [Mr. Talbert], causing him to fall down to the ground."[34] Unnamed officials rushed Mr. Talbert "to Jefferson Health Torresdale Hospital with a closed head injury[] and sores within his mouth."[35] Mr. Talbert alleges he was then "forced into protective custody for safety."[36]

Mr. Talbert moved for a preliminary injunction relating to his medical care and available recreation time as an inmate housed in administrative segregation. Finding disputed facts from the filings, we held an evidentiary hearing. Mr. Talbert presented his testimony and cross-examined medical professionals and prison officials. He presented cogent arguments. We denied his request for injunctive relief with detailed findings of fact and conclusions of law based on the evidence adduced by Mr. Talbert.[37] He appealed our denial of injunctive relief. He moved for discovery and sanctions against the Defendants for allegedly not producing discovery to him.

4

Mr. Talbert then moved for counsel under 28 U.S.C. § 1915(e)(1).[38] He claims:

1. [He] will continuously be prejudiced by his *pro se* status."
2. Counsel will better enable [him] to present evidence at trial and cross-examine witnesses.
3. Counsel can afford to hire expert witnesses.
4. Imprisonment will hinder [his] ability to contact certain witnesses and obtain certain evidence that can easily be provided to an attorney.[39]

We decline to refer Mr. Talbert's case to our volunteer panel of attorneys because he has demonstrated an ability to handle litigation through his extensive *pro se* experience, which includes appearances in our Court of Appeals and successfully negotiating a settlement for multiple cases.

## C. Mr. Talbert's experience in our Court of Appeals.

On top of his extensive experience in this court, which we detail below, Mr. Talbert has on occasion successfully persuaded our Court of Appeals to vacate a district court ruling and remand for further proceedings.

### a. *Talbert v. Correctional Dental Associates*, No. 16-1408

Mr. Talbert sued Correctional Dental Associates, various doctors, and the City of Philadelphia for failing to timely refer him to an off-site facility for oral care under general anesthesia due to his intense fear of needles.[40] Judge Stengel granted Mr. Talbert's motion to proceed *in fourma pauperis.*[41] Judge Stengel granted Mr. Talbert's request for counsel, but no attorney accepted the case.[42] After transfer to our docket because Mr. Talbert sued Judge Stengel, we dismissed Mr. Talbert's claims on summary judgment.[43] Mr. Talbert then successfully navigated the appeals process himself. Our Court of Appeals vacated our ruling in part and remanded the case for further proceedings.[44] He then *pro se* settled his claims.

### b. *Talbert v. Corizon Inc.*, No. 17-2144

Mr. Talbert sued Corizon Inc., alleging First Amendment retaliation and Eighth Amendment deliberate indifference to serious medical need.[45] The district court dismissed the complaint for failure to state a claim, and Mr. Talbert appealed.[46] Our Court of Appeals affirmed the district court's dismissal of Mr. Talbert's claims.[47]

### c. *Talbert v. Corizon Medical*, No. 15-1236

Mr. Talbert sued Corizon Medical and a number of their employees for allegedly ignoring his medical needs and causing him undue suffering.[48] Mr. Talbert alleged Corizon medical employees prevented him from attending appointments to reverse his ileostomy.[49] The district court denied his request for a preliminary injunction because Mr. Talbert failed to show irreparable harm.[50] Mr. Talbert appealed, and our Court of Appeals affirmed the district court's judgment.[51]

### d. *Talbert v. City of Phila.*, 15-1718

Mr. Talbert sued the City of Philadelphia and other various city officials for failing to accept him into the witness relocation protection program.[52] The district court granted his request to proceed *in forma pauperis*.[53] Mr. Talbert requested an appointment of counsel, but no attorney accepted the case.[54] After Judge Stengel reassigned the case to our docket after Mr. Talbert sued him in state court, we granted the City's motion to dismiss.[55] Mr. Talbert appealed, but Our Court of Appeals dismissed the case for failure to pay the requisite filing fee.[56]

### e. *Talbert v. Correctional Dental Associates, et al.*, No. 18-5112

Mr. Talbert sued Correctional Dental Associates and various prison officials for failing to provide him requested dental treatment, specific medications, and requested special diets.[57] Mr. Talbert proceeded *in forma pauperis* and did not request counsel.[58] On May 29, 2019, we witnessed Mr. Talbert cross-examine three witnesses himself during a motion hearing.[59] We

denied Mr. Talbert's motion for a preliminary injunction.[60]  On June 6, 2019, Mr. Talbert filed an appeal of our decision, and the appeal is currently pending.[61]

## D.    Mr. Talbert's global settlement.

Besides appearing in our Court of Appeals, Mr. Talbert successfully negotiated a settlement of numerous cases on October 25, 2017.

### a.    *Talbert v. McGarry*, 14-6095

Mr. Talbert sued Police Officer McGarry, the City of Philadelphia, and Michael A. Nutter for an unlawful search, a pattern and practice of unlawful searches, and wrongful imprisonment.[62] Believing somebody had possibly put a hit on his life, Mr. Talbert called the police.[63]  When the police arrived on the scene, they found marijuana on Mr. Talbert and arrested him.[64]  Mr. Talbert proceeded *in forma pauperis*, and amended his complaint.[65]  Judge Stengel granted the Defendants summary judgment, which Mr. Talbert appealed until including the case in the global settlement before Judge Heffley in 2017. [66]

### b.    *Talbert v. City of Phila. et al*, 16-5360

Mr. Talbert sued the City of Philadelphia, and various city officials for conspiring and authorizing the forging of known fraudulent criminal complaints as retaliation against him.[67]  Mr. Talbert claimed guards harassed him, put razorblades in his dinner tray, and denied him access to his attorney and the courts while incarcerated.[68]  The court allowed Mr. Talbert to proceed *in forma pauperis*.[69]  He then requested counsel four times before including the case in the 2017 global settlement.[70]

### c.    *Talbert v. McGorry*, 17-4261

Mr. Talbert sued police officers for unlawful arrest, unreasonable use of force, and failing to take him to the hospital after assaulting him.[71]  We allowed Mr. Talbert to proceed *in forma*

*pauperis.*[72]  Mr. Talbert did not move for appointment of counsel before including the case in the global settlement reached before the 2017 global settlement.[73]

#### d. *Talbert v. Carney*, 17-0869

Mr. Talbert sued prison officials for transferring him to the Philadelphia Detention Center and forcing him into the segregated housing unit based on his classification status.[74]  Mr. Talbert alleged the officials retaliated against him for filing the lawsuits against the Philadelphia Department of Prisons and its employees.[75] Mr. Talbert proceeded *in forma pauperis*.[76]  He did not move for an appointment of counsel before including the case in the 2017 global settlement.

#### e. *Talbert v. Hoyt et al*, 16-5544

Mr. Talbert sued various probation officers for forcing him to provide urine samples while on probation.[77]  Mr. Talbert alleged a probation officer intentionally deceived the judge into believing he had gotten high multiple times, in violation of his supervised release.[78]  Mr. Talbert proceeded *in forma pauperis*, and filed two amended complaints.[79]  He did not move for an appointment of counsel before including this case in the 2017 global settlement.[80]

#### f. *Talbert v. City of Phila. et al.,* 17-4262[81]

Mr. Talbert sued the City of Philadelphia, Mayor Kenney, and various prison officials for "collectively" engaging in a practice of deliberate indifference to the security and protection of inmates.  Mr. Talbert alleged officials failed to install surveillance monitors on a closed-custody unit for inmate protection.[82]  Mr. Talbert claims this allowed guards to harass, threaten, ignore grievances and assault inmates while housed in solitary confinement.[83]  Mr. Talbert proceeded *in forma pauperis*.[84]  He did not move for an appointment of counsel before including this case in the 2017 global settlement.[85]

8

### g. *Talbert v. Farrell*, 14-6094

Mr. Talbert sued various prison officials for providing him only one meal tray instead of the two required by his medical diet and for using pepper-spray when he tried to address the missing tray.[86] Mr. Talbert alleged he remained covered in pepper-spray for an extended period of time before officers used unnecessary force to provide him with medical treatment.[87] Mr. Talbert proceeded *in forma pauperis* and moved for an appointment of counsel.[88] No counsel volunteered, but Mr. Talbert included the case in the 2017 global settlement.[89]

### h. *Talbert v. McFadden et al*, 14-5480

Mr. Talbert sued the City of Philadelphia and other prison officials for falsely arresting and assaulting him while he picked his belongings up off the ground.[90] He proceeded *in forma pauperis* and amended his complaint once.[91] Mr. Talbert moved for an appointment of counsel, but no counsel volunteered for the case.[92] He then included the case in the 2017 global settlement agreement.[93]

## E. Mr. Talbert's other litigation experience.

While no two cases are alike, there are similar themes among them repeated in this case.

### 1. Cases where we denied Mr. Talbert's request for counsel.

In many cases, Mr. Talbert asks us to appoint him counsel. We have denied Mr. Talbert's requests for counsel[94] because a private citizen is not entitled to counsel in a civil rights claim.[95]

### a. *Talbert v. Sembrot et al.*, No. 18-2270

Mr. Talbert sued an individual for making false statements to a Philadelphia Detective.[96] He claimed these statements caused the detective to unlawfully arrest Mr. Talbert because the detective failed to adequately investigate the individual's statements.[97] Mr. Talbert claimed this

9

alleged conspiracy caused him emotional distress from the false imprisonment.[98] We granted his motion to proceed *in forma pauperis*.[99] We denied his motion for counsel as we could not "involuntarily appoint counsel in this civil rights matter and the Court does not have a volunteer panel for non-prisoner civil rights matters."[100] Mr. Talbert appealed our summary judgment denial summary judgment motion.[101] Our Court of Appeals later dismissed for lack of prosecution.[102]

### b. *Talbert v. City of Philadelphia et al.*, No. 18-1501

Mr. Talbert sued Philadelphia, a towing company, and individuals for allegedly towing his car without due process in violation of his Fourteenth Amendment and for failing to pay him just compensation as required by the Takings Clause of the Fifth Amendment.[103] We granted his motion to proceed *in forma pauperis*.[104] We denied his motion for counsel as we could not "involuntarily appoint counsel in this civil rights matter and the Court does not have a volunteer panel for non-prisoner civil rights matters."[105] After we granted two defendants' motions to dismiss,[106] we dismissed the remaining defendants for lack of prosecution.[107]

### c. *Talbert v. Ciglar*, No. 18-2518

Mr. Talbert claimed a probation officer retaliated against him for exercising his First Amendment right to petition.[108] Mr. Talbert alleged the probation officer falsely imprisoned him in violation of the Fourth Amendment, detained him in inhumane conditions, caused mental suffering such as humiliation, shame, and post-traumatic stress.[109] We granted his motion to proceed *in forma pauperis*.[110] We denied his motion for counsel as we could not "involuntarily appoint counsel in this civil rights matter and the Court does not have a volunteer panel for non-prisoner civil rights matters."[111] After amending his complaint twice, Mr. Talbert failed to state a

10

claim under the First, Fourth or Fourteenth Amendments requiring we grant the defendant's motion to dismiss.[112]

## 2. Cases we dismissed for lack of prosecution or failure to pay.

There are various times when we dismissed Mr. Talbert's case because he failed to follow through with proceedings. In these cases, Mr. Talbert either did not request counsel or he made the proceeding ended before he could move for counsel.

### a. *Talbert v. Williams et al.*, No. 18-5114

Mr. Talbert sued the Philadelphia District Attorney's office as well as the District Attorney under § 1983 for Second Amendment violations.[113] Mr. Talbert began this action after the former district attorney's criminal conviction.[114] Because of this conviction, Mr. Talbert claimed the District Attorney prejudiced him during prosecution.[115] We dismissed his complaint for lack of prosecution when Mr. Talbert failed to return his complaint signed.[116]

### b. *Talbert v. Carney et al.*, No. 17-5808[117]

Mr. Talbert sued various Philadelphia Department of Prison officials alleging they conspired to place him in the "hole" in retaliation of him exercising his First Amendment right to sue.[118] He also claimed false imprisonment, breach of contract, and due process right violations.[119] We denied Mr. Talbert's request to proceed *in forma pauperis* and granted him leave to refile. After Mr. Talbert failed to refile, we dismissed the case for failure to prosecute.[120]

### c. *Talbert v. Wise et al.*, No. 17-1103

Mr. Talbert sued the Pennsylvania Department of Public Welfare and a third party investigator for paying Mr. Talbert's hospital bills, accrued as a pretrial detainee, with insurance

instead of paying the money themselves.[121] This allegedly made Mr. Talbert liable for close to one million dollars, forcing Mr. Talbert to pay the bill with money from a recent settlement of a earlier case against the same hospital.[122] Mr. Talbert proceeded *in forma pauperis*, but did not request appointment of counsel.[123] We dismissed for lack of prosecution for failing to file an amended complaint.[124]

### d. *Talbert v. Johnson*, No. 19-1341

Mr. Talbert sued Sergeant Johnson for using excessive and unnecessary force while handcuffing Mr. Talbert.[125] We denied Mr. Talbert's request to proceed *in forma pauperis* and required him to pay $400 to proceed with the case.[126] We dismissed Mr. Talbert's case because he failed to pay. After Mr. Talbert failed to pay, we dismissed the case.[127]

### e. *Talbert v. Carney, et al.*, No. 19-1340

Mr. Talbert sued CFCF's prison commissioner, a warden, and a correctional officer for telling several inmates Mr. Talbert "was a 'snitch,' because of all of the lawsuits that [Mr. Talbert] had filed against the Philadelphia Department of Prisons."[128] Mr. Talbert alleged this caused another inmate Knox to assault and "sucker-punch[]" him.[129] We denied Mr. Talbert's request to proceed *in forma pauperis* and required him to pay $400 to proceed with the case.[130] After Mr. Talbert failed to pay, we dismissed the case.[131] He now tries to bring back these same claims against Lieutenant Mulhollan.

### f. *Talbert v. SFE Energy, et al.*, No. 17-4751

Mr. Talbert sued a Pennsylvania utility company and its regional manager for alleged discrimination under Title VII of the Civil Rights Act when they fired him for having a criminal

12

record.[132] He claimed the company and manager caused him "severe mental trauma, and emotional distress by terminating him from the job illegally, without good cause."[133] We dismissed his complaint when Mr. Talbert failed to show cause for why the case should not be dismissed nor why he failed to pay the filing fee.[134]

### 3. Cases dismissed for lack of jurisdiction or failure to state a claim.

We dismissed Mr. Talbert's other claims because we lacked jurisdiction or Mr. Talbert failed to state a claim.[135] In the following cases, Mr. Talbert did not move for counsel.

#### a. *Talbert v. Keefe Grp.*, No. 18-5111

Mr. Talbert claimed the defendant unlawfully inflated prices for commissary items in the Philadelphia Department of Prisons, which overcharged inmates and resulted in unjust enrichment.[136] We dismissed the claim after Mr. Talbert failed to file an amended complaint establishing federal subject matter jurisdiction.[137]

#### b. *Talbert v. City of Philadelphia et al.*, No. 18-1581

Mr. Talbert sued Philadelphia, the Chief Deputy City Solicitor and the Assistant City Solicitor for allegedly retaliating against him for exercising his First Amendment right to sue by breaching a contractual obligation when they made him wait ninety days to receive a settlement fund.[138] Mr. Talbert claimed he "needed the settlement funds on time to pay for counsel" and he "suffered significant stress, and unnecessary imprisonment, by having no money from the Defendants to pay for counsel."[139] We dismissed this case for lack of federal subject matter jurisdiction.[140]

13

## c. *Talbert v. City of Philadelphia et al.*, No. 17-4209

Mr. Talbert sued Philadelphia and Camden for failing to recognize the National Crime Information Center's outstanding arrest warrant for him despite the various encounters he had with police.[141] He claims the defendants "collectively, have implemented and maintained a widespread practice of using and operating an inadequate NCIC system that allows fugitives [sic] to be undetected for several years."[142] This caused a six year delay in Mr. Talbert's arrest, which impeded his enrollment in college.[143] We dismissed his complaint because claiming he should have been arrested earlier does not state a constitutional claim.[144]

## II.    Analysis

District courts enjoy "broad discretion to determine whether appointment of counsel is warranted, and the determination must be made on a case-by-case basis."[145] If we first determine the plaintiff's case has some "arguable merit," our Court of Appeals then offers possible considerations in exercising our discretion: (1) the plaintiff's ability to present his own case, (2) the complexity of the legal issues, (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation, (4) the amount a case is likely to turn on credibility determinations, (5) whether the case will require the testimony of an expert witness, and (6) whether the plaintiff can afford counsel on his own behalf.[146] Our Court of Appeals refers to these factors as the "*Tabron* Factors."[147] We already found Mr. Talbert's claims in this case "ha[ve] some merit."[148]

Our Court of Appeals has recently offered further guidance in evaluating successive requests for counsel from *pro se* litigants proceeding *in forma pauperis*. In *Houser v. Folino*, a *pro se* inmate sued prison officials for deliberate indifference to his medical needs, and the district court appointed him counsel.[149] But when counsel withdrew over apparent disputes with the

14

inmate, the district court declined to appoint a new lawyer.[150] The inmate tried the case himself and lost.[151] The inmate then appealed, arguing the district court abused its discretion in denying his second request for counsel without considering all the required *Tabron* factors.[152] Our Court of Appeals disagreed, explaining the district court had to only consider the *Tabron* factors relevant to the case.[153] The district court found the *pro se* inmate could "ably represent himself" after demonstrating his ability present his own case, and successfully persuade the court to deny summary judgment while acting *pro se*.[154] The inmate also displayed his ability to handle multiple cases, litigating four other cases at the same time.[155] The district court did not find the *pro se* inmate's ability to navigate discover or his ability to conduct factual investigation as relevant, so they did not consider these factors.[156] Our Court of Appeals explained the *Tabron* factors "are not exhaustive, nor are they each always essential[,]" but they do apply to successive requests for counsel where relevant.[157]

## A. The plaintiff's ability to present his or her own case.

Mr. Talbert's "ability to present his own case . . . is '[p]erhaps the most significant'" in determining whether to appoint counsel.[158] "Courts generally should consider the plaintiff's education, literacy, prior work experience, and prior litigation experience."[159] While a litigant's "ability to file and respond to motions . . . does indicate . . . some legal knowledge, . . . 'this fact alone does not conclusively establish' that a litigant 'is able to present his own case.'"[160] But the ability to lucidly explain the issues, identify relevant case law, and successfully persuade the court does demonstrate a *pro se* plaintiff's ability to present his or her own case.[161] "[I]f the plaintiff is a prisoner," the court should also consider "the restraints placed upon him or her by confinement."[162]

15

Mr. Talbert consented to the withdraw of his retained counsel after apparent disagreements.[163] Mr. Talbert conveyed his desire to steward his case as he deems appropriate. He has demonstrated he can do so, reminding us he has won cases in this Court without counsel. He recently cross-examined medical professionals in a preliminary injunction hearing in this case. Mr. Talbert has demonstrated an ability to protect and represent his interests in this case and in other numerous actions before this Court. We have reviewed his work product in over forty cases in approximately two years. As in *Houser*, Mr. Talbert has extensive litigation experience. He sued the earlier-assigned Chief Judge Stengel in state court for his decisions causing the reassignment to our docket. While many his cases are dismissed for failure to prosecute, frivolous, or failing to state a claim he has proceeded on a few cases and recently won a Court of Appeals' partial vacatur on an Eighth Amendment claim involving his prison dental care.[164] Mr. Talbert has shown he can research and argue questions of law and develop a factual record through examination and cross-examination of witnesses, including less than a month ago in the hearing on his motion for a preliminary injunction.[165]

This *Tabron* factor applies as it did in *Houser*. There is no basis for referring this case to our volunteer panel of attorneys when Mr. Talbert professes to know what he is doing, has shown some success, and has repeatedly declined counsel.

**B.      The complexity of the legal issues.**

"In conjunction with the consideration of the plaintiff's capacity to present his or her case, the court must also consider the difficulty of the particular legal issues."[166] Where the law is not clear, the court should be more inclined to appoint counsel in order to more effectively present the complex legal issues.[167]

16

Mr. Talbert does not argue the complexity of the legal issues in his case require appointment of counsel. He instead seeks counsel to fund his discovery. Our volunteer attorneys are not his lenders. This *Tabron* factor also weighs against referral to our Panel.

## C. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation.

We may consider the "degree to which factual investigation will be required and the ability of the plaintiff to pursue such investigation."[168] "[T]he court may also consider the extent to which prisoners and others suffering confinement may face problems in pursuing their claims."[169] "[W]here the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted."[170]

Mr. Talbert argues his imprisonment will hinder his ability to "contact certain witnesses and obtain certain evidence that can easily be provided to an attorney."[171] Again, he seeks volunteer counsel to be his lender. We find no basis he needs counsel for a fact investigation. He knows the facts.

## D. The amount a case is likely to turn on credibility determinations.

"[W]hen a case is likely to turn on credibility determinations, appointment of counsel may be justified."[172] When witness credibility is a key issue, "it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination."[173]

Mr. Talbert argues counsel will allow him to more effectively cross-examine witnesses.[174] We agree with him. But he has repeatedly declined counsel claiming he can represent himself. His present position is contrary to his arguments before us. While facially attractive as a factor favoring referral to the volunteer panel, we know Mr. Talbert seeks counsel as a lender not as an advocate. He swore he can do the same job.

**E.    Whether the case will require the testimony of expert witnesses**

Appointed counsel may also be warranted if the case will require testimony from expert witnesses.[175]

Mr. Talbert argues his case will require expert witnesses, and he needs counsel to pay for these expert witnesses.[176]    Again, our volunteer attorneys are not lenders.

**F.    Whether the plaintiff can attain and afford counsel on his own behalf.**

Before appointing counsel, courts should consider whether the plaintiff could retain counsel on his own behalf.[177] "If counsel is easily attainable and affordable by the litigant, but the plaintiff simply has made no effort to retain an attorney, then counsel should not be appointed by the court."[178] Mr. Talbert does not have the funds to afford counsel. But Mr. Talbert retained counsel. He then consented to counsel's withdrawal. He admits "I know how to go forward the only this is that prevents me going forward is lawyers have financial means to do depositions... I know the law and I know what equals to the complaint that I'm bringing."[179]

Mr. Talbert lacks funds to pay counsel. But this factor alone does not warrant asking volunteer lawyers to be lenders to a litigant who believes he is well versed the civil rights law and federal procedure and does not need legal advice.

**III.    Conclusion**

In an accompanying order, we deny Mr. Talbert's request to appoint counsel. Mr. Talbert is familiar with civil rights law, rules of civil procedure, and appellate practice. He has demonstrated he is more than capable of presenting his own case. After applying the *Tabron* factors and guided by *Houser,* we can find no basis to refer Mr. Talbert's case to our volunteer panel when he agreed to proceed without counsel a few weeks ago and now admits he seeks counsel to fund his discovery. He admits he does not need a lawyer's skill.    His dozens of filings in this Court

18

confirm his experience. We decline to refer this case to the volunteer Panel. As he wished a few

weeks ago, Mr. Talbert will continue to proceed towards summary judgment and possible trial.

---

[1] No. 16-2242, 2019 WL 2518494 (3d Cir. June 19, 2019) (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)), *Tabron v. Grace*, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993)).

[2] ECF Doc. No. 61 at ¶¶ 1, 10.

[3] *Id.* at ¶ 11.

[4] *Id.*

[5] *Id.* at ¶ 13.

[6] *Id.* at ¶ 14.

[7] *Id.*

[8] *Id.* at ¶ 15.

[9] ECF Doc. No. 26.

[10] ECF Doc. No. 28.

[11] ECF Doc. No. 30.

[12] ECF Doc. No. 36.

[13] ECF Doc. No. 61 at ¶ 16.

[14] ECF Doc. No. 38 at 2 of 8.

[15] ECF Doc. No. 43.

[16] ECF Doc. No. 44.

[17] *Id.*

[18] ECF Doc. No. 48.

[19] ECF Doc. No. 97 (N.T. June 25, 2019).

[20] *Id.* at 11:15–22.

[21] *Id.* at 11:16–17.

19

[22] *See id.* at 7:20–22 ("I filed all the documents. This got to pre-trial through me."); *id.* at 11:4–17 (describing a jury trial before Judge Stengel and an appeal before our Court of Appeals).

[23] N.T. Apr. 25, 2019, p. 11.

[24] *Id.* at 14:13–19 (consenting to Attorney Considine's withdraw so long as he receives "a copy of everything that's in the file").

[25] ECF Doc. No. 52.

[26] *Id.* at ¶ 17.

[27] *Id.*

[28] *Id.* at ¶ 18. Defendants are presently moving to strike these allegations against Lieutenant Mulhollan as dismissed on April 5, 2019 in C.A. No. 19-1340. We await Mr. Talbert's explanation by July 2, 2019 as to how he can now sue Lieutenant Mulhollan for the same conduct challenged in a complaint we dismissed three months ago.

[29] *Id.* at ¶ 20.

[30] *Id.* at ¶ 21.

[31] *Id.* at ¶ 23.

[32] *Id.* at ¶ 24.

[33] *Id.* at ¶ 25.

[34] *Id.* at ¶ 26.

[35] *Id.* at ¶ 27.

[36] *Id.* at ¶ 29.

[37] ECF Doc. Nos. 77, 80.

[38] ECF Doc. No. 94 at 1 of 2.

[39] *Id.*

[40] *Talbert v. Corr. Dental Assocs.*, 731 F. App'x 145, 146–47 (3d Cir. 2018).

[41] Order, *Talbert v. Correctional Dental Ass'n*, No. 16-1408 (E.D. Pa. May 5, 2016), ECF Doc. No. 4.

[42] *Talbert v. Correctional Dental Ass'n*, No. 16-1408 (E.D. Pa.), ECF Doc. No. 61.

[43] *Talbert v. Correctional Dental Ass'n*, No. 16-1408 (E.D. Pa), ECF Doc. No. 87.

[44] *Talbert v. Correctional Dental Ass'n,* No. 16-1408 (E.D. Pa.), ECF Doc. No. 94.

[45] *Talbert v. Corizon Inc.*, 711 Fed. App'x 668, 669 (3d Cir. 2017).

[46] *Id.*

[47] *Id.*

[48] *Talbert v. Corizon Medical*, 605 Fed. App'x 86 (3d Cir 2015).

[49] *Id.* at 87.

[50] *Id.*

[51] *Id.* at 88.

[52] Compl., *Talbert v. City of Phila, et al.*, No. 15-1718 (E.D. Pa.), ECF Doc. No. 18.

[53] Order, *Talbert v. City of Phila., et al.,* No. 15-1718 (E.D. Pa.), ECF Doc. No. 5.

[54] Order, *Talbert v. City of Phila., et al.,* No. 15-1718 (E.D. Pa.), ECF Doc. No. 31.

[55] Order, *Talbert v. City of Phila., et al.,* No. 15-1718 (E.D. Pa.), ECF Doc. No. 44.

[56] Order, *Talbert v. City of Phila., et al.,* No. 15-1718 (E.D. Pa.), ECF Doc. No. 48.

[57] Compl., *Talbert v. Correctional Dental Associates, et al.,* No. 18-5122 (E.D. Pa.), ECF Doc. No. 31.

[58] Order, *Talbert v. Correctional Dental Associates, et al.,* No. 18-5122 (E.D. Pa.), ECF Doc. No. 4.

[59] Minute, *Talbert v. Correctional Dental Associates, et al.,* No. 18-5122 (E.D. Pa.), ECF Doc. No. 36.

[60] Order, *Talbert v. Correctional Dental Associates, et al.,* No. 18-5122 (E.D. Pa.), ECF Doc. No. 37.

[61] Notice, *Talbert v. Correctional Dental Associates, et al.*, No. 18-5122 (E.D. Pa.), ECF Doc. No. 41.

[62] Compl., *Talbert v. McGarry, et al.,* No. 14-6095 (E.D. Pa.), ECF Doc. No. 5.

[63] *Id.*

[64] *Id.*

[65] Order, *Talbert v. McGarry, et al.*, No. 14-6095 (E.D. Pa.), ECF Doc. No. 4, 32.

[66] Order, *Talbert v. McGarry, et al.,* No. 14-6095 (E.D. Pa.), ECF Doc. No. 84.

[67] Compl., *Talbert v. City of Philadelphia, et al.*, No. 16-5360 (E.D. Pa.), ECF Doc. No. 3.

[68] *Id.*

[69] Order, *Talbert v. City of Philadelphia, et al.*, No. 16-5360 (E.D. Pa.), ECF Doc. No. 2.

[70] Minute, *Talbert v. City of Philadelphia, et al.*, No. 16-5360 (E.D. Pa.), ECF Doc. No. 22.

[71] Compl., *Talbert v. McGorry*, No. 17-4261 (E.D. Pa.), ECF Doc. No. 3.

[72] Order, *Talbert v. McGorry*, No. 17-4261 (E.D. Pa.), ECF Doc. No. 2.

[73] Minute, *Talbert v. McGorry*, No. 17-4261 (E.D. Pa.), ECF Doc. No. 5.

[74] Compl., *Talbert v. Carney*, No. 17-0869 (E.D. Pa.), ECF Doc. No. 3.

[75] *Id.*

[76] Order, *Talbert v. Carney*, No. 17-0869 (E.D. Pa.), ECF Doc. No. 2.

[77] Compl., *Talbert v. Hoyt*, 16-05544 (E.D. Pa.), ECF Doc. No. 26.

[78] *Id.*

[79] Order, *Talbert v. Hoyt,* 16-05544 (E.D. Pa.), ECF Doc. No. 7.

[80] Minute, *Talbert v. Carney,* No. 17-0869 (E.D. Pa.), ECF Doc. No. 25.

[81] Mr. Talbert filed seven cases raising claims arising out of his August 14, 2017 through August 31, 2017 incarceration at the Philadelphia Detention Center: (1) *Talbert v. City of Phila., et al.,* No. 17-4262 (E.D. Pa.) (filed Sept. 25, 2017); (2) *Talbert v. Mental Health., et al.,* No. 17-4263 (E.D. Pa.) (filed Sept. 25, 2017); (3) *Talbert v. City of Phila., et al.,* No. 17-4264 (E.D. Pa.) (filed Sept. 25, 2017); (4) *Talbert v. Corizon, et al.,* No. 17-4265 (E.D. Pa.) (filed Sept. 25, 2017); (5) *Talbert v. Christmas, et al.,* No. 17-4266 (E.D. Pa.) (filed Sept. 25, 2017); (6) *Talbert v. Dunkin, et al.,* 17-4267 (E.D. Pa.) (filed Sept. 25, 2017); and (7) *Talbert v. Twyne, et al.,* 17-4285 (E.D. Pa) (filed Sept. 26, 2017)). These cases overlapped and/or related to each other, and some allegations arose against the same defendants.

Roughly a week later, Mr. Talbert filed another six cases, which we dismissed as being duplicative of the consolidated cases: (1) *Talbert v. City of Phila., et al.,* No. 17-4374 (E.D. Pa.) (filed Oct. 2, 2017); (2) *Talbert v. Dunkin, et al.,* No. 174375 (E.D. Pa.) (filed Oct. 2, 2017); (3) *Talbert v. Christmas, et al.,* No. 17-4376 (E.D. Pa.) (filed Oct. 2, 2017); (4) *Talbert v. McGorry, et al.,* No. 17-4377 (E.D. Pa.) (filed Oct. 2, 2017); (5) *Talbert v. Corizon, et al.,* No. 17-4378 (E.D. Pa.) (filed Oct. 2, 2017); and (6) *Talbert v. City of Phila., et al.,* No. 17-4379 (E.D. Pa.) (filed Oct. 2, 2017)).

[82] Compl., *Talbert v. City of Phila,. et al.,* No. 17-4262 (E.D. Pa.), ECF Doc. No. 3.

[83] *Id.*

[84] Order, *Talbert v. City of Phila., et al.,* No. 17-4262 (E.D. Pa.), ECF Doc. No. 2.

[85] Minute, *Talbert v. City of Phila., et al.,* No. 17-4262 (E.D. Pa.), ECF Doc. No. 5.

[86] Compl., *Talbert v. Farrell, et al.,* No. 14-06094 (E.D. Pa.), ECF Doc. No. 5.

[87] *Id.*

[88] Motion, *Talbert v. Farrell, et al.,* No. 14-06094 (E.D. Pa.), ECF Doc. No. 30.

[89] Minute, *Talbert v. Farrell et al.,* No. 14-06094 (E.D. Pa.), ECF Doc. No. 93.

[90] Compl., *Talbert v. McFadden, et al.,* No 14-05480 (E.D. Pa.), ECF Doc. No. 36.

[91] *Id.*

[92] Motion, *Talbert v. McFadden, et al.,* No. 14-05480 (E.D. Pa.), ECF Doc. No. 4.

[93] Minute, *Talbert v. McFadden, et al.,* No. 14-05480 (E.D. Pa.), ECF Doc. No. 68.

[94] There is one other case where Mr. Talbert requested for counsel, but we never ruled upon the motion. *See Talbert v. City of Philadelphia, et al.*, No. 16-5360 before dismissal.

[95] *See Tabron v. Grace,* 6 F.3d 147, 153 (3d Cir. 1993) ("[Indigent civil] litigants have no statutory right to appointed counsel"); *see also Mallard v. United States District Court for the S. Dist. of Iowa,* 490 U.S. 296, 303-05 (1998) (finding 28 U.S.C. § 1915(d) does not authorize mandatory counsel appointments).

[96] *Talbert v. Sembrot,* No. 18-2270 (E.D. Pa.), ECF Doc. No. 2.

[97] *Id.*

[98] *Id.*

[99] *Talbert v. Sembrot,* No. 18-2270 (E.D. Pa.), ECF Doc. No. 4.

[100] *Talbert v. Sembrot,* No. 18-2270 (E.D. Pa.), ECF Doc. No. 6.

[101] *Talbert v. Sembrot*, No. 18-2270 (E.D. Pa.), ECF Doc. No. 26.

[102] *Talbert v. Sembrot*, No. 18-2270 (E.D. Pa.), ECF Doc. No. 29.

[103] *Talbert v. City of Philadelphia*, No. 18-1501 (E.D. Pa), ECF Doc. No. 2.

[104] *Talbert v. City of Philadelphia*, No. 18-1501 (E.D. Pa), ECF Doc. No. 6.

[105] *Talbert v. City of Philadelphia*, No. 18-1501 (E.D. Pa), ECF Doc. No. 12.

[106] *Talbert v. City of Philadelphia*, No. 18-1501 (E.D. Pa), ECF Doc. No. 26.

[107] *Talbert v. City of Philadelphia*, No. 18-1501 (E.D. Pa), ECF Doc. No. 39.

[108] *Talbert v. Ciglar*, No. 18-2518 (E.D. Pa), ECF Doc. No. 17.

[109] *Id.*

[110] *Talbert v. Ciglar*, No. 18-2518 (E.D. Pa), ECF Doc. No. 5.

[111] *Talbert v. Ciglar*, No. 18-2518 (E.D. Pa), ECF Doc. No. 12.

[112] *Talbert v. Ciglar*, No. 18-2518 (E.D. Pa), ECF Doc. No. 29.

[113] *Talbert v. Williams,* No. 18-5114 (E.D. Pa), ECF Doc. No. 2.

[114] *Id.*

[115] *Id.*

[116] *Talbert v. Williams,* No. 18-5114 (E.D. Pa), ECF Doc. No. 5.

[117] *Talbert v. Carney*, No. 17-5808 (E.D. Pa), ECF Doc. No. 3.

[118] *Talbert v. Carney*, No. 17-5808 (E.D. Pa), ECF Doc. No. 1-1.

[119] *Id.*

[120] Order, Talbert v. Carney, No. 17-5808 (E.D. Pa), ECF Doc. No. 3.

[121] Compl., *Talbert v. Wise et al.,* No. 17-1103 (E.D. Pa.), ECF Doc. No. 6.

[122] *Id.*

[123] Order, *Talbert v. Wise et al.,* No. 17-1103 (E.D. Pa.), ECF Doc. No. 5.

[124] Order, *Talbert v. Wise et al.,* No. 17-1103 (E.D. Pa.), ECF Doc. No. 17.

24

[125] Compl., *Talbert v. Johnson*, No. 19-1341 (E.D. Pa.), ECF Doc. No. 2.

[126] Order, *Talbert v. Johnson*, No. 19-1341 (E.D. Pa.), ECF Doc. No. 6.

[127] Order, *Talbert v. Johnson*, No. 19-1341 (E.D. Pa.), ECF Doc. No. 7.

[128] Compl., *Talbert v. Carney, et al.,* No. 19-1340 (E.D. Pa.), ECF Doc. No. 2.

[129] *Id.*

[130] Order, *Talbert v. Carney, et al.,* No. 19-1340 (E.D. Pa.), ECF Doc. No. 6.

[131] Order, *Talbert v. Carney, et al.,* No. 19-1340 (E.D. Pa.), ECF Doc. No. 8.

[132] Compl., *Talbert v. SFE Energy, et al.,* No. 17-4751 (E.D. Pa.), ECF Doc. No. 1-1.

[133] *Id.*

[134] Order, *Talbert v. SFE Energy, et al.,* No. 17-4751 (E.D. Pa.), ECF Doc. No. 3-4.

[135] We transferred some of Mr. Talbert's cases to the District of New Jersey. *See Talbert v. Board of Chosen Freeholder, et al.*, No. 17-04208; *Talbert v. CFG Health Systems, et al.*, No. 17-04207. In *Board of Chosen Freeholder*, Mr. Talbert sued the corporation owning Camden County Correctional Facility, Camden County, and prison officials for charging inmates processing fees, inadequately staffing the prison, and subjecting inmates to unsanitary conditions within the Camden County Correctional Facility. Compl., *Talbert v. Board of Chosen Freeholders, et al.,* No. 17-4208 (E.D. Pa.) (ECF Doc. No. 3). Mr. Talbert proceeded *in forma pauperis. See* Order, *Talbert v. Board of Chosen Freeholders, et al.,* No. 17-04208 (E.D. Pa.), ECF Doc. No. 2. But he did not request appointment of counsel before the case's transfer to the District Court of New Jersey. Transfer, *Talbert v. Board of Chosen Freeholders, et al.,* No 17-04208 (E.D. Pa.).

In *CFG Health Systems, et al.*, No. 17-4207, Mr. Talbert sued CFG Health Systems and one of its employees for failing to provide him with muscle relaxers, a double mattress pass, diapers and a low fiber diet during his time as a pretrial detainee at Camden County Correctional Facility. Compl., *Talbert v. CFG Health Systems, et al.,* No. 17-4207 (E.D. Pa.) (ECF Doc. No. 3). Mr. Talbert proceeded *in forma pauperis.* Order, *Talbert v. CFG Health Systems, et al.,* No. 17-4207 (E.D. Pa.) (ECF Doc. No. 2). But Mr. Talbert did not move for an appointment of counsel before the case's transfer to the District Court of New Jersey in September, 2017. Transfer, *Talbert v. CFG Health Systems, et al.,* No. 17-4207.

[136] Compl., *Talbert v. Keefe Grp.,* No. 18-5111 (E.D. Pa.), ECF Doc. No. 2.

[137] Order, *Talbert v. Keefe Grp.,* No. 18-5111 (E.D. Pa.), ECF Doc. No. 8.

[138] Compl., *Talbert v. City of Phila., et al.,* No. 18-1581 (E.D. Pa.), ECF Doc. No. 2.

[139] *Id.*

[140] Order, *Talbert v. City of Phila., et al.,* No. 18-1581 (E.D. Pa.), ECF Doc. No. 3.

[141] Compl., *Talbert v. City of Phila., et al.,* No. 17-4209 (E.D. Pa.), ECF Doc. No. 1-1. *See also Talbert v. Ciglar*, No. 18-02518.

[142] Compl., *Talbert v. City of Phila., et al.,* No. 17-4209 (E.D. Pa.), ECF Doc. No. 1-1.

[143] *Id.*

[144] Order, *Talbert v. City of Phila., et al.,* No. 17-4209 (E.D. Pa.), ECF Doc. No. 3.

[145] *Tabron v. Grace*, 6 F.3d 147, 157–58 (3d Cir. 1993); *see* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."); *Hall v. Philadelphia Hous. Auth.*, No. 17-5753, 2019 WL 1545183, at *7 (E.D. Pa. Apr. 9, 2019) ("The Court may, as a matter of its discretion, *choose* to appoint counsel for plaintiffs proceeding *in forma pauperis.*").

[146] *Tabron*, 6 F.3d at 155–57.

[147] *Houser*, 2019 WL 2518494 at *3 ("[W]hether the *Tabron* factors guide district courts' discretion regarding successive requests for counsel or only the initial request.").

[148] *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997); *see* ECF Doc. No. 30 (order granting in part and denying in part Defendants' motion to dismiss).

[149] *Houser*, 2019 WL 2518494 at *1.

[150] *Id.*

[151] *Id.*

[152] *Id.*

[153] *Id.*

[154] *Id.* at *4.

[155] *Id.* at *5.

[156] *Id.*

[157] *Id.*

[158] *Houser,* 2019 WL 2518494, at *4 (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 501 (3d Cir. 2002)).

[159] *Tabron*, 6 F.3d at 156.

[160] *Houser*, 2019 WL 2518494 at *4 (quoting *Parham*, 126 F.3d at 459).

[161] *See id.*; *Harden v. Knight*, No. 04-1392, 2009 WL 2588704, at *2 (D. Del. Aug. 19, 2009) (denying request for appointment of counsel when *pro se* plaintiff's "Amended Complaint lucidly explained this issue and identified pertinent caselaw, demonstrating again that [he] can investigate and prepare his own case").

[162] *Tabron*, 6 F.3d. at 156 (citing *Rayes v. Johnson*, 969 F.2d 700, 703-04 (8th Cir. 1992)).

[163] *Compare* ECF Doc. No. 38 (requesting counsel withdraw); *with* ECF Doc. No. 44 (motion apologizing for motion to withdraw); *see also* ECF Doc. No. 52 (approving Mr. Talbert's counsel's motion to withdraw with Mr. Talbert's consent).

[164] *See Talbert v. Correctional Dental Associates*, No. 17-2700 (3d Cir. Apr. 23, 2018) (Order).

[165] *See Easley v. Tritt*, No. 17-930, 2019 WL 1493172, at *3 (M.D. Pa. Apr. 4, 2019) (denying request for appointment of counsel when *pro se* plaintiff demonstrated his ability to present his case through "fil[ing] several documents in this matter, including, but not limited to, the complaint and amended complaint, briefs in opposition to the prior motions to dismiss and motions for summary judgment, and several filings regarding discovery"); *Harden*, 2009 WL 2588704, at *2 (denying request for appointment of counsel when *pro se* plaintiff's "Amended Complaint lucidly explained this issue and identified pertinent caselaw, demonstrating again that [he] can investigate and prepare his own case").

[166] *Tabron*, 6 F.3d. at 156.

[167] *Id.* (citing *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986)).

[168] *Tabron*, 6 F.3d at 156 (citing *Hodge*, 802 F.2d at 61).

[169] *Id.*

[170] *Id.* (citing *Rayes v. Johnson*, 969 F.2d at 703).

[171] ECF Doc. No. 94, at p. 1.

[172] *Tabron*, 6 F.3d at 156 (citing *Maclin v. Freake*, 650 F.2d 885, 888 (7th Cir. 1981)).

[173] *Id.* (quoting *Maclin*, 650 at 888).

[174] ECF Doc. No. 94, at p. 1.

[175] *Tabron*, 6 F.3d at 156.

[176] ECF Doc. No. 94, at p. 1.

177 *Tabron*, 6 F.3d at 157 n.5.

178 *Id.*

179 ECF Doc. No. 97, p. 11.