# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 18-1620** |
| | : | |
| **BLANCHE CARNEY,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **August 13, 2019**

Inmate Charles Talbert *pro se* alleges the Commissioner and two wardens in the Philadelphia Department of Prisons placed him in administrative segregation in retaliation for his earlier lawsuits against them.   He alleges the prison officials placed him in administrative segregation for an indefinite period without notice.   While there, he suffered a "lack of shower, sleep, eating, and recreation time due to the plague of mice[;]" "damaged commissary from mice chewing through its packages, costing hundreds of dollars in financial loss[;]" and "lack of out-of-cell[] and outdoor exercise[] that caused poor health conditions such as high cholesterol[] and aggravation to his preexisting chronic lower back pain and spasms."[1]   Mr. Talbert also claims the Commissioner and two wardens "deprived equal access to Islamic literature[] and [I]mam[] that Christians had to Chaplains and Bibles."[2]   After examination of the summary judgment record which does not include sworn statements from the prison officials as to why they placed Mr. Talbert in administrative segregation or address the allegedly indefinite duration of segregation without notice, we find genuine issues of material fact require the jury's findings on his First Amendment retaliation and procedural due process claims.   We find no triable issues on his substantive due process, access to religious services, or supervisory liability claims arising from a 2019 assault.

## I.    Analysis

Mr. Talbert sues Blanche Carney, Commissioner of the Philadelphia Department of Prisons; Gerald May, Warden of the Curran-Fromhold Correctional Facility; Terrance Clark, Warden of the Detention Center; and Officer Shaniqua Ford, a Correctional Officer at Curran-Fromhold Correctional Facility "assigned to [Mr. Talbert's] housing unit" in February 2019.[3] Mr. Talbert has yet to return the U.S. Marshal's address form necessary to serve Officer Ford and we today sever her from trial next month.

We construe Mr. Talbert's operative complaint as alleging First Amendment retaliation and procedural and substantive due process claims against Commissioner Carney, Warden May, and Warden Clark.

### A.    To proceed to trial on his First Amendment retaliation claim against Commissioner Carney and Wardens May and Clark, Mr. Talbert must prove protected conduct, an adverse action, and causation.

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'"[4]  At the summary judgment stage, we assess the prisoner's retaliation claim under "a burden-shifting framework."[5]  Under this framework, the prisoner must first "prove that his protected conduct in exercising a constitutional right was a substantial or motivating factor in the challenged decision." The inmate can satisfy this burden by "prov[ing] one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link."[6]  If the prisoner is unable to demonstrate "unusually suggestive time

proximity" or "a pattern of antagonism coupled with timing . . . then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation."[7]

If the inmate makes this initial showing, "the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest."[8]

### 1. Mr. Talbert's lawsuits against Commissioner Carney and Wardens May and Clark constitute protected conduct.

Mr. Talbert claims his earlier lawsuits against Commissioner Carney and Wardens May and Clark constitute protected conduct.[9] He is correct. Filing grievances within the prison system and civil actions in court constitute constitutionally protected conduct under the First Amendment.[10] Mr. Talbert filed various lawsuits against Commissioner Carney and Wardens May and Clark before the placement decision challenged in this case.

In *Talbert v. City of Philadelphia*, No. 16-5360, Mr. Talbert alleged Warden May "made disrespectful comments" and "call[ed] [Mr. Talbert] a 'jailhouse snitch[,]' in regards to [him] filing grievances and lawsuits."[11] In *Talbert v. Mental Health Management*, No. 17-4263, Mr. Talbert alleged Warden Clark improperly allowed Mr. Talbert to be housed on a unit with "mentally ill inmates," who would "flood their cells with water, feces, and urine on a constant basis to where those toxins would flood Plaintiff's cell."[12]

In *Talbert v. Christmas*, No. 17-4266, Mr. Talbert sued Commissioner Carney and Warden Clark alleging Commissioner Carney ordered Mr. Talbert transferred from Curran-Fromhold to the Detention Center, where "he was . . . placed in the hole, despite not having any prison misconduct report filed against him."[13] Mr. Talbert raised nearly identical claims in *Talbert v. Christmas*, No. 17-4376, which we dismissed as duplicative of his claims in earlier-filed No. 17-4266.[14] And in *Talbert v. City of Philadelphia*, No. 17-4262, Mr. Talbert sued Commissioner

3

Carney and Warden Clark alleging they "failed to install surveillance monitors, capable of recording, on a closed-custody unit, like all other closed-custody prisons within their authority and jurisdiction."[15] Mr. Talbert raised nearly identical claims in *Talbert v. City of Philadelphia*, No. 17-4379, which we dismissed on October 5, 2017, as duplicative of his claims raised in No. 17-4262.[16]

## 2. A jury could find transfer of Mr. Talbert to administrative segregation constituted an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

Mr. Talbert carries his burden at summary judgment of demonstrating "an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights."[17] The Commissioner and Wardens argue Mr. Talbert's claim fails because he "has never been deterred from exercising his First Amendment right to sue prison officials," as he threatened to file additional lawsuits during his time in administrative segregation.[18] The Commissioner and Wardens cite a November 13, 2017 grievance Mr. Talbert addressed to Major Christmas in which Mr. Talbert wrote he "did absolutely nothing" to warrant his placement in the hole and cautioned Defendants' campaign of First Amendment retaliation against him would be unsuccessful. "Anyway, I will just file suit again once I'm released," Mr. Talbert wrote.[19]

It may be true Commissioner Carney's, Warden May's, or Warden Clark's alleged decision did not deter Mr. Talbert from suing. But this fact alone does not compel summary judgment in their favor. The test is objective, not subjective. In *Banda v. Corniel*, an individual subject to civil commitment as a sexually violent predator sued various staff members of his treatment unit "alleging that they retaliated against him for filing grievances by placing him in a Modified Activities Program (MAP), which resulted in the loss of numerous privileges, including his job."[20] The district court found the prisoner failed to state a claim for retaliation against the defendants

4

remaining in the case because his allegations admit his placement did not deter him from filing grievances.[21] Our Court of Appeals, however, vacated the district court's dismissal, explaining "whether [the plaintiff] was *actually* deterred is immaterial; the question is whether 'a person of ordinary firmness' would have been deterred."[22]

A jury could find Commissioner Carney and Warden May and Clark's (either individually or jointly) placement of Mr. Talbert in administrative segregation under these circumstances could have deterred a person of ordinary firmness from exercising his or her constitutional rights. Mr. Talbert's claim of adverse action is similar to those alleged in *Allah v. Seiverling*, where an inmate claimed his retaliatory placement in administrative segregation resulted in his "reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance."[23] Our Court of Appeals found "[a] fact finder could conclude from those facts that retaliatory continued placement in administrative confinement would 'deter a person of ordinary firmness from exercising his First Amendment rights.'"[24]

Mr. Talbert claims he experienced materially different conditions in administrative segregation, including damaged commissary and reduced out-of-cell exercise time. We are mindful our Court of Appeals has acknowledged "several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights."[25] A jury could find Mr. Talbert's transfer to administrative segregation, subjecting him to differing conditions of confinement, including the loss of certain liberties available to inmates in the general prison population, constituted an adverse action.

### 3. Genuine issues of material fact surrounding causation preclude summary judgment on the First Amendment claim.

Mr. Talbert must also demonstrate "his protected conduct in exercising a constitutional right was a substantial or motivating factor in the challenged decision," which he may do by "prov[ing] one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link."[26] If the prisoner is unable to demonstrate "unusually suggestive time proximity" or "a pattern of antagonism coupled with timing . . . then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation."[27] On this limited summary judgment record, Mr. Talbert sufficiently demonstrates an unusually suggestive time proximity between his protected activity in early and mid-October 2017 (filing lawsuits in this court against Defendants) and the retaliatory action in early November 2017 (his placement in administrative segregation).

The summary judgment record does not identify the definitive date of Mr. Talbert's placement in administrative segregation. For example, a November 27, 2017 form labeled "Medical/Behavioral Health Review for Segregation Placement" lists Mr. Talbert's "[d]ate of [s]egregation [p]lacement" as November 9, 2017.[28] But the officials' Special Management Status Placement Order and subsequent weekly Special Management Status Review forms report officials placed Mr. Talbert in restricted status on November 27, 2017.[29] Mr. Talbert's November 13, 2017 grievance addressed to Major Christmas suggests the adverse action occurred on November 9, 2017 as opposed to November 27, 2017. It is possible, of course, administrative segregation and "Special Management Status" refer to different inmate housing or security designations, but because Defendants' counsel elected to not produce affidavits or other evidence explaining material differences in these statuses and we must draw inferences in favor of Mr. Talbert as the

non-moving party, we construe the various prison records as demonstrating the date of the alleged adverse action as November 9, 2017.

At one end of the spectrum, a span of years or numerous months between protected conduct and retaliatory action is too remote for an inmate to rely on timing alone. In *Keeling v. Barrager*, for example, our Court of Appeals held a thirteen-month gap between the inmate's transfer to a different cell block and the inmate's preceding lawsuit allegedly motivating the retaliatory transfer "was too remote in time to infer an unlawful motive."[30] Similarly, in *Watson v. Rozum*, our Court of Appeals held an inmate's lawsuit filed in 2009 was "just too remote to suggest a retaliatory motive" for conduct occurring in 2011.[31] At the other end of the spectrum, an inmate suffering an adverse action within hours or days of protected conduct may rely on timing alone to demonstrate causation.[32] Mr. Talbert's claim falls between those two.

We find instructive *Henry v. Lamoreaux*, in which Judge Baxter found the span of just over one month between the inmate's protected conduct and the adverse action "close enough to be considered 'unusually suggestive' of retaliatory motive, so as to satisfy the third element of [the inmate's] retaliation claim."[33] Judge Pratter's analysis in *Walker v. Regan* also counsels a span of seventeen days between the protected conduct and the adverse action "alone may not be 'unduly suggestive' of causation," but the timing combined with the defendant's "history of acrimony, is sufficient to create an inference of causation."[34]

Mr. Talbert's claimed time between his protected activity and the adverse action is significantly less than in *Keeling* and *Watson*. On October 5, 2017, just thirty-five days before his transfer to administrative segregation, Mr. Talbert sued Commissioner Carney and Warden Clark in *Talbert v. Christmas*, No. 17-4266, and *Talbert v. City of Philadelphia*, No. 17-4379. And on October 4, Mr. Talbert sued Warden Clark in *Talbert v. Mental Health Management*, No. 17-4263,

and Commissioner Carney and Warden Clark in *Talbert v. City of Philadelphia*, No. 17-4262. On October 17, 2017, Mr. Talbert settled his claims in *Talbert v. City of Philadelphia*, No. 17-4262, and *Talbert v. City of Philadelphia*, No. 16-5360, following a settlement conference with Judge Heffley.[35]

Absent contrary competent evidence adduced from the Commissioner or Wardens at this stage, Mr. Talbert presents sufficient evidence of unduly suggestive timing. In addition to his early October complaints, Mr. Talbert settled cases against all three Defendants within approximately three weeks of his transfer to administrative segregation. The dispute apparently did not end on the date of dismissal, as Mr. Talbert later sued the City of Philadelphia claiming a breach of the settlement agreement.[36]

Because Mr. Talbert has demonstrated timing unduly suggestive of causation, "the burden then shifts to the prison official[s] to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest."[37] Commissioner Carney and Wardens May and Clark have not carried their burden at this stage. Absent sworn testimony, we cannot discern from the Defendants' submitted record why prison officials placed Mr. Talbert in administrative segregation. The Medical/Behavioral Health Review for Segregation Placement form lists the "[r]eason for [s]egregation [p]lacement" as "Ad. Seg – Close Custody," but the form does not provide any other details explaining why Mr. Talbert is under close custody.[38] One might expect to find more clarity in the "Special Management Status Placement Order," as the form requires the official select one of the following grounds:

[ ] The inmate is potentially dangerous to himself or herself or others or poses a serious escape risk.
[ ] The [i]nmate requests protection or is deemed by a Supervisor to require protection, such as a witness for whom restrictive status is necessary.

[ ] The inmate requires Immediate mental health evaluation and cannot be in contact with general population inmates pending that evaluation. Inmates in this category will be placed in administrative segregation only if medical housing is not available otherwise.

[ ] Medical isolation cases in which medical housing is not otherwise available.

[ ] The inmate is charged with a disciplinary infraction, awaiting a disciplinary hearing and in the judgment of a supervisor may become disruptive or be dangerous if left in the general population.

[ ] The inmate is in transfer status to a higher security facility.

[ ] The inmate, in the judgement of staff, may for any other reason pose a threat to himself, herself, others or the security of the facility.[39]

But the official who completed Mr. Talbert's Special Management Placement Order selected the last reason, "[t]he inmate, in the judgement of staff, may for *any other reason* pose a threat to himself, herself, others or the security of the facility."[40] Below the checked box appears the following additional explanation: "Reason: Close Custody."[41] But Commissioner Carney and Wardens May and Clark do not provide an affidavit or manual explaining when, how, or why an inmate may be placed in close custody. They instead ask us to employ circular reasoning: Mr. Talbert is in "Special Management Status" because he is in close custody.

And although Commissioner Carney and Wardens May and Clark argue the "Keep Separate Summary" suggests they placed Mr. Talbert in administrative segregation because of his various conflicts with the listed inmates, we cannot discern a nexus in the submitted record between the Keep Separate Summary and Mr. Talbert's placement in administrative segregation. The Keep Separate Summary, for example, does not list the date on which prison officials or employees added an inmate's name to the Keep Separate Summary. This information is particularly important because Mr. Talbert claims inmate Knox assaulted him in 2019—over a year after the alleged retaliation.

B. **Mr. Talbert's procedural due process claim may proceed to trial, but he has failed to adduce evidence of prison conditions amounting to punishment.**

1. **Mr. Talbert's procedural due process challenge to the indefinite segregation may proceed.**

9

As in our October 3, 2018 Memorandum, we construe Mr. Talbert's complaint as alleging a violation of his Fourteenth Amendment right to procedural due process.[42] Mr. Talbert alleges he "remained in administrative segregation[] indefinitely, with no explanation as to why he was there under that status."[43] Commissioner Carney and Wardens May and Clark do not advance a summary judgment argument addressing Mr. Talbert's procedural due process claim.

In *Stevenson v. Carroll*, our Court of Appeals held "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the S[ecurity Housing Unit] without explanation or review of their confinement."[44] But "the process required for administrative transfers of pretrial detainees need not be extensive."[45] Prison officials need only "provide detainees who are transferred into more restrictive housing for administrative purposes . . . an explanation of the reason for their transfer as well as an opportunity to respond."[46]

Commissioner Carney's and Wardens May's and Clark's submitted record does not reveal the lack of a dispute of material fact as to notice. They produce a printout listing Mr. Talbert's history of administrative and disciplinary confinements. The entry corresponding to the detention at issue in this case simply says "Hearing" under the heading "Status" and "12/26/2017" under the heading "Review."[47] It does not disclose whether Mr. Talbert received notice of the hearing or attended it. While the record shows prison officials regularly reviewed Mr. Talbert's status after his placement in administrative segregation, the records do not show whether Mr. Talbert received notice of these reviews or attended them himself. A single affidavit could have provided much clarity to these records and prison processes. We are instead asked to examine these spreadsheets and then draw inferences in Commissioner Carney and Wardens May and Clark's favor. We

cannot do this. Mr. Talbert may proceed to trial on his procedural due process claim challenging his detention.

### 2.      Mr. Talbert may not proceed on a substantive due process claim.

Mr. Talbert claims his transfer to administrative segregation and the materially different conditions he endured there amounted to punishment violative of the Due Process Clause of the Fourteenth Amendment. Commissioner Carney and Wardens May and Clark move for summary judgment arguing Mr. Talbert "has not produced any evidence to support his claim of unsanitary conditions, beyond his mere statements that the prison was infested with mice and rodents," and Mr. Talbert "acknowledges that he was given access to the administrative segregation law library."[48]

"While the Eighth Amendment bars cruel and unusual punishment—typically deprivations of 'the minimal civilized measure of life's necessities[]' —the Fourteenth Amendment's due process clause protects pretrial detainees from being punished *at all.*"[49]  To effectuate this prohibition on pretrial punishment, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."[50]  The Supreme Court in *Bell v. Wolfish* held "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment,'" but "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."[51]

Commissioner Carney and Wardens May and Clark adduced the October 13, 2017 *Detention Center 2017 Inspection Report*, in which an Inspection Team from the Department of

Corrections' Office of County Inspections and Services described procedures and conditions in the Detention Center.[52] The Inspection Team inspected the Detention Center on September 26, 2017 and reported on the general prison conditions. The Inspection Team found the housing units "clean, quiet, and orderly," and the "[s]howers and vents . . . reasonably clean and maintained."[53] The Inspection Team reported "[p]illows, mattresses, sheets, and blankets were clean and in satisfactory condition" and "[b]edding items are laundered weekly."[54] The Inspection Team concluded "[d]uring the physical inspection of the facility, the Inspectors observed that the overall conditions of confinement and quality of life were consistent with Title 37, Chapter 95 requirements" and "[t]he housing and support areas were clean and maintained in conditions that appeared appropriate for the age of the facility."[55]

Mr. Talbert has not adduced evidence relating to prison conditions opposing Commissioner Carney and Wardens May and Clark's facts. These facts are undisputed and warrant our dismissing the substantive due process claim before trial.

3. **Mr. Talbert has not shown the Commissioner's or the Wardens' personal involvement in alleged denial of equal access to religious services or the 2019 alleged assault.**

To the extent Mr. Talbert alleges a freestanding claim relating to his alleged denial of "equal access to Islamic literature[] and [I]mam" to the same extent "Christians had [access] to Chaplains and Bibles," Mr. Talbert has not produced evidence showing Defendants' personal involvement in the alleged constitutional deprivation.[56]

"Individual liability can be imposed under Section 1983 only if the state actor played an 'affirmative part' in the alleged misconduct and 'cannot be predicated solely on the operation of respondeat superior.'"[57] A plaintiff must prove "each individual [defendant] . . . had personal involvement in the alleged wrongdoing."[58] Mr. Talbert swore he "asked the chaplain

multiple times for religious materials and the Imam."[59] He does not, however, produce evidence showing how Commissioner Carney or Warden May or Warden Clark personally acted to deprive him access to religious instruction or materials. Mr. Talbert did not sue the chaplain. The Commissioner and Wardens cannot be held liable solely because they are supervisors.

We similarly conclude Mr. Talbert cannot impose liability on Commissioner Carney and Wardens May and Clark for the alleged 2019 assault by inmate Knox. Mr. Talbert alleges Officer "Ford caused [Mr. Talbert] to be assaulted by Knox[] in retaliation [for Mr. Talbert] filing lawsuits against [Commissioner] Carney and other PDP staff members."[60] But Mr. Talbert has not produced evidence of Defendants' knowledge of or acquiescence in Officer Ford's alleged conduct. Because Mr. Talbert has yet to serve Defendant Ford, we do not pass on the merit of the allegations against her.

## II.    Conclusion

Genuine issues of material fact preclude our summary dismissal of Mr. Talbert's First Amendment retaliation and procedural due process claims. The Commissioner and Wardens elected not to adduce testimonial evidence for summary judgment. Our jury will evaluate the competing evidence on the First Amendment retaliation and procedural due process claims. We find no genuine issues of material fact precluding summary judgment on Mr. Talbert's substantive due process, access to religious materials, or supervisory claims. We grant Commissioner Carney's and Wardens May's and Clark's motion for summary judgment as to the substantive due process, access to religious materials and supervisory claims, but deny summary judgment on Mr. Talbert's First Amendment retaliation and procedural due process claims.

---

[1] ECF Doc. No. 61 at ¶ 14.

[2] *Id.*

[3] *Id.* at ¶¶ 2–6, 21. Mr. Talbert also alleged claims against Lt. Muhollan, but on July 11, 2019, we struck "paragraphs 5 and 16–30 of the second amended Complaint (ECF Doc. No. 61) to the extent they refer to Lt. Muhollan" and "dismiss[ed] Lt. Muhollan." ECF Doc. No. 109 (emphasis omitted). On July 30, 2019, we denied Mr. Talbert's Rule 60(b) Motion seeking to vacate our July 11, 2019 Order. ECF Doc. No. 129.

[4] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (alteration in original) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

[5] *DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010).

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] ECF Doc. No. 61 at ¶ 9 (arguing Defendants placed him in administrative segregation "in retaliation [for] my lawsuits").

[10] *See Mitchell*, 318 F.3d at 530; *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000).

[11] Complaint, *Talbert v. City of Philadelphia*, No. 16-5360 (E.D. Pa. Oct. 13, 2016), ECF Doc. No. 1-1.

[12] Complaint, *Talbert v. Mental Health Management*, No. 17-4263 (E.D. Pa. Oct. 4, 2017), ECF Doc. No. 3.

[13] Complaint, *Talbert v. Christmas*, No. 17-4266 (E.D. Pa. Oct. 5, 2017), ECF Doc. No. 3.

[14] Order, *Talbert v. Christmas*, No. 17-4376 (E.D. Pa. Oct. 5, 2017), ECF Doc. No. 2.

[15] Complaint, *Talbert v. City of Philadelphia*, No. 17-4262 (E.D. Pa. Oct. 4, 2017), ECF Doc. No. 3.

[16] Order, *Talbert v. City of Philadelphia*, No. 17-4379 (E.D. Pa. Oct. 5, 2017), ECF Doc. No. 2.

[17] *DeFranco*, 387 F. App'x at 154.

[18] ECF Doc. No. 119 at 3.

[19] ECF Doc. No. 121 at 23.

[20] *Banda v. Corniel*, 682 F. App'x 170, 172 (3d Cir. 2017) (footnote omitted).

[21] *Id.* at 173.

[22] *Id.* at 174 (quoting *Rauser*, 241 F.3d at 333).

[23] 229 F.3d 220, 225 (3d Cir. 2000).

[24] *Id.* (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).

[25] *Mitchell*, 318 F.3d at 530.

[26] *DeFranco*, 387 F. App'x at 154.

[27] *Id.*

[28] ECF Doc. No. 121 at 10.

[29] *See id.* at 12–17.

[30] *Keeling v. Barrager*, 666 F. App'x 153, 155 (3d Cir. 2016).

[31] *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016).

[32] *See, e.g., Hill v. Barnacle*, 655 F. App'x 142, 146 (3d Cir. 2016).

[33] *Henry v. Lamoreaux*, No. 16-250, 2018 WL 3037180, at *5 (W.D. Pa. June 19, 2018). In *Henry*, the inmate "filed the subject grievance against prison official Wells, among others, on March 5, 2016," received on March 16, 2016 "an extension notice indicating that Plaintiff's allegations of excessive force were being investigated," and the "alleged retaliatory conduct occurred on April 7, 2016." *Id.*

[34] *Walker v. Regan*, No. 13-7556, 2019 WL 1003155, at *7 (E.D. Pa. Feb. 27, 2019).

[35] Order, *Talbert v. Philadelphia*, No. 17-4262 (E.D. Pa. Oct. 17, 2017), ECF Doc. No. 4; Order, *Talbert v. Philadelphia*, No. 16-5360 (E.D. Pa. Oct. 17, 2017), ECF Doc. No. 23.

[36] *Complaint, Talbert v. City of Philadelphia*, No. 18-1581 (E.D. Pa. Apr. 16, 2018), ECF Doc. No. 2.

[37] *DeFranco*, 387 F. App'x at 154.

[38] ECF Doc. No. 121 at 10.

[39] *Id.* at 12.

[40] *Id.* (emphasis added).

[41] *Id.*

[42] *See* ECF Doc. No. 29 at 7.

[43] ECF Doc. No. 61 at ¶ 13.

[44] *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007).

[45] *Id.* at 70.

[46] *Id.*

[47] ECF Doc. No. 121 at 21.

[48] ECF Doc. No. 119 at 4–5.

[49] *Dewald v. Jenkins*, No. 16-04597, 2017 WL 1364673, at *4 (E.D. Pa. Apr. 13, 2017) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

[50] *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

[51] *Id.* at 539.

[52] ECF Doc. No. 121 at 33–47.

[53] *Id.* at 39.

[54] *Id.* at 40.

[55] *Id.* at 37.

[56] ECF Doc. No. 61 at ¶ 14.

[57] *Shockley-Byrd v. Zambrana*, No. 18-4845, 2019 WL 2226128, at *3 (E.D. Pa. May 22, 2019) (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

[58] *Id.*

[59] ECF Doc. No. 121 at 25.

[60] ECF Doc. No. 61 at ¶ 28.