## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHARLES TALBERT | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | NO. 18-1620 |
| | : | |
| BLANCHE CARNEY, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                              **October 10, 2019**

In one of his fifty-four prisoner *pro se* cases filed without paying fees, serial litigant Charles Talbert sued Philadelphia Department of Prisons Commissioner Blanche Carney and Wardens Gerald May and Terrance Clark alleging they placed him in administrative segregation from November 2017 until February 2018 in retaliation for his earlier lawsuits against them.[1] He alleged they placed him in segregation for an indefinite period without notice.[2] We addressed dozens of pre-trial motions including limiting evidence of his criminal history except as to the correctional officers' basis for segregation. He allowed volunteer experienced counsel to withdraw representation before trial. We entered detailed findings on summary judgment motions finding the correctional officers failed to demonstrate undisputed facts explaining the administrative segregation. Given the disputed facts, we proceeded to a jury trial on Mr. Talbert's procedural due process and First Amendment retaliation claims.[3] The Commissioner and Wardens credibly testified they did not know of the lawsuits against them. They admitted documents showing weekly reviews of Mr. Talbert's segregated status. Mr. Talbert cross-examined them. The jury returned a verdict in favor of Commissioner Carney and Wardens May and Clark.[4] Disappointed in the verdict and challenging the witnesses' credibility, Mr. Talbert now moves to set aside the verdict or for a new trial. We deny his motions for post-trial relief.

**I.    Analysis**

Mr. Talbert now moves for a new trial arguing (1) Commissioner Carney and Wardens May and Clark committed fraud and perjury through false testimony; (2) the jury's verdict ran contrary to the weight of the evidence; (3) we improperly admitted evidence of Mr. Talbert's earlier criminal record, prison infractions, and misconduct generally; (4) he could not depose Commissioner Carney or Warden May concerning the request for transfer and authorization forms because they violated our discovery order and did not timely turn over documents; and, (5) he would have deposed parties and obtained witnesses if we appointed him counsel.[5]  Mr. Talbert also moves under Rule 50(b) for judgment as a matter of law arguing (1) Commissioner Carney and Wardens May and Clark committed fraud and perjury; (2) Commissioner Carney and Wardens May and Clark failed to produce discovery under our scheduling order; (3) the record reflects Mr. Talbert's transfer must have been retaliation for previous lawsuits he filed against corrections' staff; and, (4) the Philadelphia Department of Prisons transferred him from general population at Curran-Fromhold Correctional Facility to administrative segregation at the Detention Center without due process.

Both motions lack merit and we deny his requested relief.

**A.    We deny Mr. Talbert's motion for a new trial.[6]**

Under Rule 59(a)(1)(A), we "may, on motion, grant a new trial on all or some of the issues –and to any party . . . after a jury trial, for any reason for which a new trial has . . . been granted in an action in federal court."[7]  Rule 59 does not provide specific grounds to grant a new trial, leaving the decision to our discretion.[8]  We may order a new trial where there is "substantial error in the admission or exclusion of evidence; error in the court's instructions to the jury' where the jury's verdict [is] inadequate or excessive; or where the verdict [is] against the weight of the evidence."[9]

.

2

Our Court of Appeals cautions we should order a new trial "only when 'the great weight of the evidence cuts against the verdict and … [] a miscarriage of justice would result if the verdict were to stand.'"[10]

Under Rule 60(b), we may grant relief "only where extraordinary justifying circumstances are present."[11] Rule 60(b)(3) allows us to relieve Mr. Talbert from the final judgment for "[f]raud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."[12] But he "bears a heavy burden" to establish Commissioner Carney and Wardens May and Clark "engaged in fraud or other misconduct, and . . . this conduct prevented [Mr. Talbert] from fully and fairly presenting his case."[13] "We view Rule 60(b) motions as 'extraordinary relief which should be granted only when extraordinary justifying circumstances are present.'"[14] "Evidence to support a new trial under Rule 60(b)(3) must be clear and convincing."[15]

Mr. Talbert moves for a new trial arguing (1) Commissioner Carney and Wardens May and Clark committed fraud and perjury through false testimony; (2) the jury's verdict ran contrary to the weight of the evidence; (3) we improperly admitted evidence of Mr. Talbert's earlier criminal record, prison infractions, and misconduct generally; (4) he could not depose Commissioner Carney or Warden May concerning the request for transfer and authorization forms at the heart of his claim; and, (5) he would have deposed parties and obtained witnesses if we appointed him counsel. We decline to order a new trial.

## 1. Commissioner Carney and Wardens May and Clark did not commit fraud or perjury.

Mr. Talbert alleges Commissioner Carney and Wardens May and Clark committed fraud by perjuring themselves. He argues they lied about their knowledge of four earlier lawsuits Mr. Talbert filed against them.[16]

3

"A witness commits perjury if he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'"[17] Each of the witnesses testified they did not recall receiving copies of the earlier civil actions Mr. Talbert filed against them. Each of the witnesses testified they were unaware of the suits, or the actions their counsel took in resolving them. They swore the City's legal counsel handled the matters until such time as necessary for discovery.

We have no basis to find the witnesses gave false testimony "with the willful intent to provide false testimony."[18] Mr. Talbert argued they did not give faithful testimony. The jury rejected his theory. We find their testimony credible.

### 2. The verdict did not run contrary to the weight of the evidence.

We "must not substitute [our] judgment regarding the facts and witness credibility for that of the jury."[19] We may only do so "where a miscarriage of justice would result if the verdict were to stand."[20] Mr. Talbert does not sufficiently adduce facts demonstrating the jury's verdict is contrary to the weight of the evidence or "a miscarriage of justice would result if the verdict were to stand."[21] Mr. Talbert merely alleges, with no supporting facts, "the verdict was against the weight of the evidence which resulted in a miscarriage of justice. Rule 59."[22]

Mr. Talbert fails to cite overlooked evidence. In *Fallowfield Development Corp. v. Strunk*, Judge Hutton found the jury's verdict supported by the great weight of the evidence.[23] After explaining our Court of Appeals' standard for overturning a jury's verdict on the ground the verdict contradicted the weight of the evidence, Judge Hutton examined the record with respect to specific facts in contention.[24]

By contrast, Mr. Talbert does not cite evidence the jury ignored. We asked the jury to review witness credibility. The jury did so and returned a verdict for Commissioner Carney and

4

Wardens May and Clark.  Mr. Talbert does not convince us "a miscarriage of justice would result if the verdict were to stand."[25]

### 3.    We did not improperly admit evidence of Mr. Talbert's misconduct.

We enjoy "broad discretion on evidentiary rulings."[26]  "Errors in evidentiary rulings are not harmful unless substantial prejudice results."[27]  Federal Rule of Civil Procedure 61 provides: "[n]o error in admitting or excluding evidence . . . is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, [we] must disregard all errors and defects . . . not affect[ing] any party's substantial rights."[28]

Our decision to allow testimony concerning Mr. Talbert's earlier prison infractions did not substantially prejudice his rights.  We only allowed references to Mr. Talbert's earlier prison misconduct in testimony concerning the procedures and processes by which Commissioner Carney and Wardens Clark and May made administrative segregation decisions.  This included fifty-one incidents between April 2014 and April 2019, in thirty-four of which the Philadelphia Department of Prisons adjudicated Mr. Talbert "guilty."[29]

We also ruled on Mr. Talbert's motion in limine to exclude all references to his prison misconduct record.[30]  Mr. Talbert argued reference to his earlier prison misconduct "demonstrate [sic] (A) unfair prejudice[;] (B) confusing the issues [;] (C) misleading the jury[; and] (D) cumulative evidence."[31]  We granted in part and denied in part Mr. Talbert's motion in limine.[32] We decided "[u]pon demonstrating foundation, Defendants may introduce evidence of their contemporaneous knowledge of, and reasons for, the placement of the Plaintiff based on specific prison misconduct history, criminal convictions for assaults, terroristic behavior or harassment, and earlier inmate separation orders as not barred by F.R.E. 404(b) and the prejudice in introducing

this evidence does not outweigh the probative value of the evidence to the defense."[33]  We ordered "[d]efendants may not introduce evidence of pretrial detentions or incarcerations not involving prison disciplinary citations, non-violent crimes, or conduct after their placement decisions unless as rebuttal evidence if Plaintiff opens the door to the jury's examination of conduct after the placement decision."[34]

Defendants complied with our Order.  We properly admitted the adduced evidence.

### 4.    Commissioner Carney and Wardens May and Clark did not violate our discovery order.

Mr. Talbert argues Commissioner Carney and Wardens May and Clark failed to honor our May 22, 2019 Order by only turning over documents at the August 29, 2019 final pretrial conference.  He alleges delay prevented him from deposing Commissioner Carney or Warden May because the "document[s] could have foreseeably been a tool to depose other prison officials with knowledge" of the documents and the underlying circumstances underpinning his lawsuit.

On May 22, 2019, we ordered Commissioner Carney and Wardens May and Clark to produce: "(a) a signed certification confirming of all copies produced to date are true and correct copies of the original documents maintained within the Defendants' possession, custody or control; (b) [c]opy of Plaintiff's handwritten grievances from October 31, 2017 through March 2019; (c) [a]ll documents evidencing decisions and knowledge relating to the transfer of Plaintiff from general population at Curran-Fromhold to administrative segregation in the Detention Center; (d) [a]ll policy statements as to the reasons for placing persons in administrative segregation since January 1, 2018; (e) [a]ll documents relating to Plaintiff's access to Islamic reading material and ability to speak with his Islamic Imam while in the Detention Center; (f) [d]ocuments relating to an alleged February 27, 2019 assault upon Plaintiff; (g) Plaintiff's medical records since February 1, 2019; and (h) [a] privilege log of all withheld documents."[35]  We ordered Commissioner Carney

6

and Wardens May and Clark to mail these documents not already produced to Mr. Talbert by May 31, 2019.[36]

On June 11, 2019, Commissioner Carney and Wardens May and Clark moved for a time extension to comply with our May 22, 2019 Order.[37]   Counsel explained a family emergency required his brief absence from the case and his failure to meet the May 31, 2019 discovery deadline.[38]   On June 12, 2019, we granted the motion and ordered Commissioner Carney and Wardens May and Clark to comply and respond to Mr. Talbert's discovery request by June 14, 2019.[39]

On June 28, 2019, we denied Mr. Talbert's motion for sanctions or default judgment arising from Commissioner Carney and Wardens May and Clark partially redacting alleged security risk information in documents they turned over to Mr. Talbert.[40]   We also ordered them to hand deliver specific pages of discovery for our *in camera* review by July 1, 2019.[41]   They did so, and we found the documents we reviewed *in camera* "relate[] solely to internal security guidelines for correctional officers concerning specifics as to timing, review and protocol in managing persons housed in administrative segregation and [the documents'] disclosure is not material to the ongoing prosecution of claims in this case . . . ."[42]

Commissioner Carney and Wardens May and Clark did not violate our Order.   They appropriately moved for time extensions, which we granted, and otherwise complied with our Order.

### 5.    Mr. Talbert is not entitled to a lawyer.

"Unlike a defendant who cannot afford counsel for his criminal case, an indigent litigant in a civil case . . . has no . . . constitutional right to counsel."[43]   We denied Mr. Talbert's request for appointment of counsel in a pretrial order.[44]   We found Mr. Talbert "demonstrated skill and

7

understanding of our civil rights laws and procedure. He candidly swears he knows more than the lawyers but seeks counsel solely to fund his discovery. He wants a lender, not a lawyer."[45]

Mr. Talbert did have an attorney, J. Michael Considine, Jr., who entered his appearance on December 28, 2018.[46] On March 16, 2019, Mr. Talbert requested Mr. Considine withdraw because Mr. Talbert "does not need Considine to represent him."[47] Eleven days later, Mr. Talbert filed an "Emergency Motion for Appointment of Counsel and/or Pretrial Conference," but subsequently apologized in his "Motion to Apologize for Motion to Withdraw" and requested we "[k]indly[] continue to have Mr. Considine as [his] counsel!"[48] Then, on April 18, 2019, Mr. Considine moved to withdraw.[49]

At our April 25, 2019 hearing, Mr. Talbert admitted he only wanted counsel to fund his deposition expenses, and the only significant difference between appointed counsel and himself is "the financial means to do depositions."[50] Mr. Talbert emphasized his extensive legal work in this case, as well as his previous trial and appellate litigation experience in our Circuit.[51] With Mr. Talbert's consent, we granted Mr. Considine's request to withdraw as Mr. Talbert's attorney.[52] On July 1, 2019, we declined to refer Mr. Talbert's case to our volunteer panel of attorneys because he "demonstrated an ability to handle litigation through his extensive *pro se* experience, which includes appearances in our Court of Appeals and successfully negotiating a settlement for multiple cases."[53]

Mr. Talbert vigorously represented his interests before and during trial. From April 18, 2018, when Mr. Talbert first sued Commissioner Carney and Wardens May and Clark, until September 4, 2019, the first date of his trial, Mr. Talbert filed twenty-nine motions,[54] including motions for summary judgment, motions for appointment of counsel, motions for judgment on the

8

pleadings, a motion for a preliminary injunction, and motions to compel discovery. The docket reflects 160 entries before the trial.

Mr. Talbert is not entitled to a new trial because he chose to proceed without counsel.

### B.     We deny Mr. Talbert's motion for judgment as a matter of law.

A motion for judgment as a matter of law under Rule 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."[55] We may grant the motion only if "the record is critically deficient of the minimum quantum of evidence to sustain the verdict."[56] While we should grant judgment as a matter of law sparingly, a "scintilla of evidence" is insufficient to sustain a jury's verdict.[57] "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict."[58] In considering a motion under Rule 50(b), we do not "weig[h] the evidence, determin[e] the credibility of witnesses, or substitute[e] our own version of the facts for that of the jury."[59]

### 1.     Commissioner Carney and Wardens May and Clark did not commit fraud or perjury.

As we explain above, Commissioner Carney and Wardens May and Clark did not commit fraud or perjury.

### 2.     Commissioner Carney and Wardens May and Clark did not violate our discovery order.

As we explain above, Commissioner Carney and Wardens May and Clark did not violate our discovery order.

     **3.**     **The record does not reflect Mr. Talbert's transfer "must have been" due to retaliation.**

Substantial evidence contradicts Mr. Talbert's assertion his transfer "must have been" retaliation for his earlier lawsuits against Commissioner Carney and Wardens May and Clark. Wardens May and Clark credibly testified Mr. Talbert's transfer related to his earlier criminal conduct and prison misconduct. The wardens explained they evaluate each new inmate using a series of factors to determine the proper housing based on the facility's—and the inmate's—safety. There is no critical deficiency of evidence permitting us to set aside the jury's verdict and grant judgment as a matter of law.

     **4.**     **The record does not reflect the Philadelphia Department of Prisons transferred Mr. Talbert without due process.**

Substantial evidence contradicts Mr. Talbert's claim the Philadelphia Department of Prisons transferred him without due process. Mr. Talbert's transfer is documented in a "Special Management Status Placement Order," issued November 27, 2017.[60] The Detention Center staff represent "[Mr. Talbert], in the judgment of staff, may for any other reason pose a threat to himself . . . or others or the security of the facility."[61] Following Mr. Talbert's initial placement under the Special Management Status Placement Order, senior Detention Center officials reviewed Mr. Talbert's confinement almost weekly. They conferred on December 4, 2017;[62] December 11, 2017;[63] December 18, 2017;[64] December 26, 2017;[65] and January 2, 2018.[66] In the January 2, 2018 status review, the Detention Center leadership recommended Mr. Talbert's release from Special Management Status.[67] Detention Center officials continuously reviewed Mr. Talbert's confinement status on a near-weekly basis between November 2017 and January 2018 when they determined they could remove him from Special Management Status.

As we explain above, the wardens use a series of factors to determine appropriate housing for inmates. The jury concluded they did so appropriately. We decline to set aside the jury's verdict.

## II.     Conclusion

We deny Mr. Talbert's motions for post-trial relief in the accompanying Order.

---

[1] ECF Doc. No. 141 at 1.

[2] *Id.*

[3] *Id.*

[4] ECF Doc. No. 164.

[5] ECF Doc. No. 168.

[6] Mr. Talbert specifically moves under Rule 60(b)(3) and 60(b)(6). ECF Doc. No. 168. But he appears to conflate Fed. R. Civ. P. 60 (Relief from a Judgement or Order) with Fed. R. Civ. P. 59 (New Trial; Altering or Amending a Judgment).

"Courts liberally construe the pleadings and the complaints of *pro se* plaintiffs and grant *pro se* litigants some degree of leniency." *Muhammad v. Pennsylvania Department of Education*, No. 18-2647, 2019 WL 1552567, at \*3 (E.D. Pa. Apr. 10, 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). We understand Mr. Talbert to move for a new trial under Rule 59 and we analyze his request under both Rule 59 and Rule 60.

[7] Fed. R. Civ. P. 59(a)(1)(A).

[8] *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court") (citing *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

[9] *Snider v. Sterling Airways, Inc.*, No. 13-2949, 2017 WL 3873540, at \*2 (E.D. Pa. Sept. 5, 2017) (citations omitted).

[10] *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)).

[11] *Pierce v. City of Philadelphia*, 391 F. Supp. 3d 419, 446 (E.D. Pa. 2019), *appeal docketed*, No. 19-2585 (3d Cir. July 17, 2019) (quoting *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991)).

[12] Fed. R. Civ. P. 60(b)(3).

[13] *Pierce*, 391 F. Supp. 3d at 446 (quoting *Bohus*, 950 F.2d at 930; *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983)).

[14] *Bohus*, 950 F.2d at 930 (quoting *Plisco v. Union Railrod Co.*, 379 F.2d 15, 16 (3d Cir. 1967), *cert. denied*, 389 U.S. 1014 (1967)).

[15] *Pierce*, 391 F. Supp. 3d at 446 (citing *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 799 (E.D. Pa. 2012)).

[16] ECF Doc No. 168 at ¶ 2.

[17] *Estate of Goldberg by Goldberg v. Nimoityn*, 734 F. App'x 141, 145 (3d Cir. 2018) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

[18] *Id.*

[19] *Banks-Scott v. City of Philadelphia*, 527 F. App'x 173, 175 (3d Cir. 2013) (per curiam) (citing *William A. Graham Co. v. Haughey*, 646 F.3d 138, 143 (3d Cir. 2011)).

[20] *Sheridan v. E.I. DuPont de Neumours and Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991)).

[21] *Id.*

[22] ECF Doc. No. 169 at ¶ 3(a).

[23] *Fallowfield Development Corp. v. Strunk*, Nos. 89-8644, 90-4431, 1994 WL 498316, at *17-18 (E.D. Pa. Sept. 2, 1994).

[24] *See id.*

[25] *Sheridan*, 100 F.3d at 1076.

[26] *United States v. Finley*, 726 F.3d 483, 491 (3d Cir. 2013) (citing *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)).

[27] *Griffiths v. CIGNA Corp.*, 857 F. Supp. 399, 411 (E.D. Pa. 1994) (citing Fed. R. Evid. 103(a)).

[28] Fed. R. Civ. P. 61.

[29] Trial Ex. 5.

[30] ECF Doc. No. 131.

[31] *Id.* at 2.

[32] ECF Doc. No. 142.

[33] *Id.*

[34] *Id.*

[35] ECF Doc. No. 72 at ¶ 1(a)-(h).

[36] *Id.* at ¶ 1.

[37] ECF Doc. No. 82.

[38] *Id.*

[39] ECF Doc. No. 86.

[40] ECF Doc. No. 100.

[41] *Id.*

[42] *Id.*

[43] *Dover v. Diguglielmo*, 181 F. App'x 234, 237 (3d Cir. 2006) (citing *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)).

[44] ECF Doc. No. 102.

[45] *Talbert v. Carney*, No. 18-1620, 2019 WL 2764363, at *1 (E.D. Pa. July 1, 2019).

[46] *Id.* at *2.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at *3.

[54] ECF Doc. Nos. 1, 3, 10, 13-14, 16, 26, 31, 34, 38, 43, 44, 56-58, 62, 64, 67, 79, 84, 94, 96, 105, 113-15, 118, 131-32.

[55] *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 373 (3d Cir. 2016) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).

[56] *McKenna v. City of Philadelphia*, 649 F.3d 171, 176 (3d Cir. 2011) (quoting *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 211 (3d Cir. 2009)).

[57] *Norman v. Elkin*, 860 F.3d 111, 129 (3d Cir. 2017) (quoting *Lightning Lube, Inc.*, 4 F.3d at 1166).

[58] *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009).

[59] *Id.* (quoting *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[60] Trial Ex. 2.

[61] *Id.*

[62] Trial Ex. 3 at 1.

[63] *Id.* at 2.

[64] *Id.* at 3.

[65] *Id.* at 4.

[66] *Id.* at 5.

[67] *Id.*

14