IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES TALBERT | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 18-1620 |
| | : | |
| BLANCHE CARNEY, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                              **October 10, 2019**

Charles Talbert spent much of the last seven years in state prisons awaiting trials on a variety of criminal charges under Pennsylvania law. Like other prisoners, he complained about the conditions of confinement and challenged his medical care in prison. Unlike most prisoners, he *pro se* sued many of those who supervised his detention and he also sued the Secretary of the Department of Corrections and wardens not directly involved in his grievances. As we detailed in an April 5, 2019 Memorandum in No. 19-1340, he filed at least fifty-four lawsuits as a *pro se* civil rights litigant since 2012 challenging state actors without paying the filing fees based on his alleged pauper status.[1] Under the Prison Litigation Reform Act, Congress precludes a prisoner from bringing claims *in forma pauperis* if a court dismissed his claims as lacking merit under the Prison Litigation Reform Act at least three times.[2] By April 5, 2019, we dismissed at least four of his recent cases as frivolous, malicious, or for failing to state a plausible claim for relief. Consistent with Congress' mandate, we held Mr. Talbert may only proceed with new claims without paying filing fees when he shows the defendant places him in impending danger.

Knowing Congress precludes him from filing new cases without paying fees after our April 5, 2019 Order in No. 19-1340, Mr. Talbert then tried an end run: add claims and defendants to

cases against other correctional officers with no relation to the pending case. We reject this end run.

Mr. Talbert may timely sue correctional officers and others he believes deprive him of civil rights while incarcerated. But Congress requires he pay the fees or show imminent harm from the named defendant to avoid paying fees. We today deny his motion to amend to add new claims to this case against state actors with no temporal or substantive connection to the underlying case. We also strike allegations against Officer Shaniqua Ford unrelated to the claims in the original case against Commissioner Carney and Wardens May and Clark which resulted in a jury verdict against Mr. Talbert last month.

I.      **Background**

Mr. Talbert began another term of pretrial detention at Curran-Fromhold Correctional Facility in late October 2017.[3]  Blanche Carney served as Philadelphia Department of Prisons Commissioner and Gerald May served as Curran-Fromhold Correctional Facility Warden.[4]  Mr. Talbert alleged Commissioner Carney and Warden May quickly reviewed and approved a transfer request transferring Mr. Talbert from Curran-Fromhold to the Detention Center.[5] They did so, Mr. Talbert claimed, "without notice, hearing, or chance to object."[6]  Terrance Clark served as Detention Center's Warden during Mr. Talbert's period of incarceration.[7]

Upon arrival at the Detention Center, Mr. Talbert alleged Commissioner Carney and Warden Clark "reviewed and approved [Mr. Talbert] being left in administrative segregation indefinitely."[8]  While housed in administrative segregation, Mr. Talbert claims he experienced: "(A) lack of shower, sleep, eating, and recreational time due to the plague of mice and roach infestation on the entire administrative housing unit[;] (B) damaged commissary from mice chewing through its packages, costing hundreds of dollars in financial loss[;] (C) lack of out-of-

2

cell, and outdoor exercise, that caused poor health conditions such as high cholesterol, and aggravation to [Mr. Talbert's] preexisting chronic lower back pain and spasms[;] (D) deprived equal access to Islamic literature, and Emam, that Christians had to Chaplains and Bibles[; and] (E) post-traumatic stress, mental anguish, intentional infliction of emotional distress, and forced to be on suicide watch."[9]  Mr. Talbert complained these conditions persisted from his transfer to the Detention Center sometime after his arrest on October 31, 2017 until his release from pretrial detention on March 2, 2018.[10]

At its core, Mr. Talbert complained Commissioner Carney and Wardens May and Clark retaliated against Mr. Talbert because he filed numerous lawsuits against each of them, and they violated Mr. Talbert's procedural due process rights by placing him in administrative segregation without notice or an opportunity for him to object.

We proceeded through discovery and prepared to try Mr. Talbert's case beginning in early September 2019.[11]

### *Having dismissed at least three of his cases filed with leave to proceed in forma pauperis, we barred Mr. Talbert from filing new cases without either paying the required fees or demonstrating imminent harm from the named defendant.*

Mr. Talbert filed at least fifty-four cases against state actors in this Court since 2012.  This Court granted him leave to proceed *in forma pauperis* in these cases, including this case against Commissioner Carney and Wardens May and Clark.  Upon review of a motion to proceed *in forma pauperis* in No. 19-1340, we entered detailed findings in a Memorandum supporting our denial of his motion for leave on April 5, 2019.  We then held he could only proceed with new claims as a prisoner if he paid the filing fee or demonstrated imminent harm presented by the named defendant.

3

*Mr. Talbert amended to add claims against Officer Ford and Lieutenant Muhollan arising from alleged conduct in January and February 2019.*

About a month after we barred him from filing new lawsuits without paying fees or showing imminent harm, Mr. Talbert moved to amend this case to add new claims against new state actors challenging conduct occurring almost a year after the conduct at issue here.[12] Mindful of the liberal amendments under Rule 15, we allowed Mr. Talbert to amend his complaint and add claims against Officer Ford and Lieutenant Muhollan subject to our review on the merits. His amended allegations related to conduct allegedly beginning in January 2019 when "Defendant Muhollan, established, and maintained, a campaign of harassment in retaliation of [Mr. Talbert's] filing a slew of lawsuits against the [Philadelphia Department of Prisons]."[13] Mr. Talbert alleged Lieutenant Muhollan "called [Mr. Talbert] a jailhouse snitch," "threatened [Mr. Talbert] with serious bodily injury," "called [Mr. Talbert] a 'nigger,'" and "made false statements against [Mr. Talbert] in a prison misconduct, in which on Feb. 6, 2019, that misconduct, was declined by Cpt. Harmer, finding [Mr. Talbert], 'not guilty.'"[14] Mr. Talbert alleged this conduct occurred between January 10, 2019 and February 18, 2019.[15]

Mr. Talbert made similar claims against Officer Ford. He alleged Officer Ford "established, and maintained a campaign of harassment and oppression, in retaliation of [Mr. Talbert] filing a lawsuit upon [Philadelphia Department of Prisons Commissioner] Carney."[16] Mr. Talbert alleged Officer Ford between February 20 and 27, 2019 told other inmates Mr. Talbert "was a jailhouse snitch, and needed stitches."[17] When another inmate, Zhyare Knox, reentered general population from disciplinary detention, Mr. Talbert claims Mr. Knox told him Officer Ford called him a snitch and "wanted [Mr. Talbert] assaulted."[18] Mr. Knox subsequently assaulted Mr. Talbert, and prison staff transferred Mr. Talbert to Torresdale Hospital for evaluation of a closed-head injury.[19] Mr. Talbert believed "[Officer] Ford caused [Mr. Talbert] to be assaulted by [Mr.]

4

Knox, in retaliation of [Mr. Talbert] filing lawsuits against [Commissioner] Carney and other [Philadelphia Department of Prisons] staff members.[20] The entirety of Officer Ford's alleged conduct occurred between February 20, 2019 and February 27, 2019.

### *We dismissed Mr. Talbert's claims against Lieutenant Muhollan as violative of the three strikes rule in the Prison Litigation Reform Act.*

Mr. Talbert effected service of his amended Complaint upon Lieutenant Muhollan who promptly moved to strike the allegations against him as violating the three strikes rule in the Prison Litigation Reform Act under our April 5, 2019 Order in No. 19-1340. He did not serve Officer Shaniqua Ford with the amended Complaint until mid-September.

We granted Lieutenant Muhollan's request to strike Mr. Talbert's allegations against him.[21] Because we dismissed Mr. Talbert at least three times and his claims against Lieutenant Muhollan did not constitute imminent danger, we lacked a basis to allow Mr. Talbert to proceed *in forma pauperis* with these new claims under our April 5, 2019 Order.[22] Further, Mr. Talbert complained of Lieutenant Muhollan's conduct between January 2019 and February 2019, but he filed his original lawsuit against Commissioner Carney and Wardens May and Clark in April 2018 complaining of conduct occurring between November 2017 and February 2018.[23] These new claims attempted to end run our April 5, 2019 Order in No. 19-1340 requiring Mr. Talbert pay the fees or demonstrate imminent harm if he wished to proceed.[24] If we sustained Mr. Talbert's claims against Lieutenant Muhollan it would "undermine[] our earlier dismissal of the same claims under the Prison Litigation Reform Act."[25]

### *The jury finds in favor of Commissioner Carney and Wardens May and Clark*

Mr. Talbert tried his case to jury verdict on September 5, 2019.[26] The jury unanimously found in favor of Commissioner Carney and Wardens May and Clark and against Mr. Talbert with respect to his claims concerning his pretrial detention from October 2017 through March 2018.[27]

5

Mr. Talbert then moved for a new trial and renewed his motion for a judgment as a matter of law.[28]  We today deny his post-trial Motions.

### *Mr. Talbert served Officer Ford after our September trial.*

Before Mr. Talbert's September 2019 trial against Commissioner Carney and Wardens May and Clark, we stayed his as-yet unserved claims against Officer Ford "to be resolved after service upon [her], evaluations of her defenses and in accord with a scheduling Order setting deadlines and trial addressing those claims."[29]

The United States Marshal returned Mr. Talbert's original Summons for the amended Complaint to Officer Ford as unexecuted because she "could not be located without additional identifying information."[30]  We ordered Mr. Talbert to show cause as to why we should not dismiss Officer Ford for his failure to prosecute.[31]  He complied with our Order and stated he filed another "285 form" with the United States Marshal with Officer Ford's correct name and identifying information.[32]  We then ordered the Clerk of Court to amend the docket with Officer Ford's correct name and identifying information and issue summons to Officer Ford, and for the United States Marshal to reattempt service of summons and Mr. Talbert's amended complaint on Officer Ford.[33]

The United States Marshal successfully served Officer Ford with the amended Complaint on September 12, 2019 following the jury verdict in this case.[34]  Officer Ford now moves to strike allegations against her in the amended Complaint as violative of the Prison Litigation Reform Act under our April 5, 2019 Order.

### *Mr. Talbert moves to add claims in this case against Commissioner Carney, Wardens May, Clark and Delaney, Lieutenant Murray, and Officer Ford challenging the 2017 conduct adjudicated by the jury and a February 2019 assault by another inmate.*

Mr. Talbert now requests we allow him to amend his amended Complaint "to conform to the evidence before and after the judgment was entered . . . ."[35]  He identifies five reasons why we

6

should permit his amendments: "(1) leave shall be freely given [under Federal Rule of Civil Procedure 15] when justice so requires[;] (2) newly discovered evidence and acts of Defendants were established before, during, and after the filing of the original pleadings[;] (3) fraud, perjury, and misrepresentation have been recognized before the Court[;] (4) the names of new Defendants are made part of newly discovered evidence which caused [Mr. Talbert's] rights to be violated[; and] (5) amendment is appropriate in order for [Mr. Talbert] to adequately make a pleading to conform with all evidence made subject of the original pleadings."[36]

He wishes to supplement claims against Commissioner Carney and Warden May and Clark related to his administrative segregation tried to the jury in early September. Mr. Talbert's proposed amendments with respect to Commissioner Carney and Wardens May and Clark are indistinguishable from Mr. Talbert's amended Complaint. He again complains of his transfer from Curran-Fromhold to the Detention Center in 2017 and his placement in administrative segregation for an indeterminate period of time.[37] He alleges Commissioner Carney and Wardens May and Clark did so as "a punishment for an exercise of [Mr. Talbert's] right to seek redress."[38]

Mr. Talbert then asserts Commissioner Carney and Wardens May and Clark "committed fraud and misrepresented facts to the Court and to the jury in regard to their knowledge of [Mr. Talbert's] settled lawsuits filed against them."[39] Mr. Talbert now attempts to again amend his complaint to include claims concerning Commissioner Carney and Wardens May and Clark's conduct at trial.

Mr. Talbert also attempts to bring new, unrelated claims against current Curran-Fromhold Warden Delaney and Curran-Fromhold Lieutenant Murray for conduct in February 2019 and March 2019.[40] Mr. Talbert alleges when he began a new period of pretrial detention in late February 2019, Lieutenant Murray served as his general population unit Lieutenant.[41] He spoke

7

to Lieutenant Murray "[o]n numerous occasions between February 20th, and February 27th, 2019 . . . concerning [Officer] Fords [*sic*] interminable disrespect towards [Mr. Talbert] . . . ."[42]

Mr. Talbert alleges Commissioner Carney forwarded a "routing slip" for one of Mr. Talbert's grievance forms to Warden Delaney on March 22, 2019.[43]  Three days later, Lieutenant Murray "knowingly, intentionally, and maliciously attempted to cover up" evidence related to Mr. Knox's assaulting Mr. Talbert.[44]  Warden Delaney and Lieutenant Murray then forwarded evidence of his assault to the Philadelphia Police Department which "place[d] [Mr. Talbert] at serious risk of danger by other inmates by being labeled a snitch."[45]

Mr. Talbert's new complaints against Warden Delaney and Lieutenant Murray relate to conduct occurring between February and March 2019.  They do not relate to Mr. Talbert's underlying claims concerning his placement in administrative segregation resolved by the jury.

Mr. Talbert proposes no substantive amendments to his claims in his amended Complaint against Officer Ford.  His claims relate to conduct between February and March 2019 and do not implicate his underlying complaints about his administrative segregation in 2017 and early 2018 resolved by the jury.[46]

**II.    Analysis**

On April 5, 2019, we dismissed several of Mr. Talbert's *pro se* complaints for failing to state a claim on April 5, 2019 in No. 19-1340.[47]  Our Court of Appeals instructs "[i]t is important to note that [section] 1915(g) does not block a prisoner's access to the federal courts.  It only denies the prisoner the privilege of filing before he has acquired the necessary filing fee."[48]  There is an exception to the three-strikes rule where a prisoner can demonstrate an imminent harm.  "'Imminent' dangers are those dangers which are about to occur at any moment or are impending."[49]  Since we dismissed Mr. Talbert for failing to state a claim at least three times and

8

he fails to plead imminent danger caused by Officer Ford, we lack a basis to allow him to proceed *in forma pauperis* in this case without paying fees to seek recovery from Officer Ford or the new defendants.

The wrinkle in this case arises from Mr. Talbert filing the original case against Commissioner Carney and Wardens May and Clark before our April 5, 2019 Order in No. 19-1340 banning him from filing future claims unless he either pays the fees or shows imminent harm under section 1915(g). He now sues Officer Ford challenging her conduct in February 2019, although the original complaint relates to conduct by Commissioner Carney and Wardens May and Clark from November 2017 until February 2018. He also seeks to amend to again sue Commissioner Carney and Wardens May and Clark for their conduct in November 2017 through February 2018. The jury already rejected these claims. But he also wants to amend to sue Commissioner Carney and Wardens May and Clark for misrepresenting facts during the trial leading to a jury verdict against him. He disagrees with their testimony and wants to "impeach" them. The jury did not find in his favor. He also wants to amend this suit to add claims against Commissioner Carney, Warden Delaney, Lieutenant Murray and Officer Ford for covering-up or allowing another inmate to assault him in February 2019.

Mr. Talbert may have claims involving the February 2019 conduct. Even if he cannot state a civil rights claim, he seeks to allege fraud claims which he may pursue in state court. The question is not whether he can recover on these claims. The issue is whether he can add claims and defendants to this case where we granted him leave to proceed *in forma pauperis* regardless of when the claims arose or who allegedly caused him harm. After careful parsing of Mr. Talbert's varied theories, we will not allow Mr. Talbert to end run our earlier dismissal of claims under the Prison Litigation Reform Act and the three-strikes rule. He may pursue these claims after paying

9

the fees required of all litigants.  We grant Officer Ford's motion to strike allegations against her

in this case.  We deny Mr. Talbert leave to amend to replead the same claims against Commissioner

Carney and Wardens May and Clark rejected by the jury with prejudice.  Claims relating to his

administrative segregation in 2017 and 2018 are finally adjudicated.  Mr. Talbert may not assert

new claims relating to conduct by Commissioner Carney, Warden Delaney or Lieutenant Murray

relating to an alleged February 2019 assault by another inmate in this case.

A.     **Mr. Talbert cannot proceed in this case against Commissioner Carney, Warden Delaney, Lieutenant Murray and Officer Ford relating to February 2019 conduct.**

Rather than paying fees for a new case as Congress requires under section 1915, Mr.

Talbert seeks to amend this case to add claims and defendants relating to an alleged assault by

inmate Knox in February 2019 upon him.  We deny his motion to amend to add these claims and

defendants as an end run of Congress' mandate.

In *Brown v. Blaine*, Mr. Brown began suit in October 2001 against prison officials and

officers for violating his constitutional rights during three strip searches.[50]  The three strip searches

occurred on: October 21, 1999; March 21, 2001; and April 6, 2001.  Judge Lancaster dismissed

the complaint for failing to state a claim.  On remand, after our Court of Appeals affirmed the

dismissal, Judge Lancaster allowed Mr. Brown to amend his complaint on August 2, 2003,

"instructing [Mr.] Brown to limit his amended complaint to 'the issues previously raised in this

litigation.'"[51]  But Mr. Brown added allegations against staff members at his newly transferred

facility long after he began the lawsuit.[52]  "The district court dismissed the amended complaint "as

outside the scope of its order . . . and cautioned [Mr.] Brown not to attempt to use the amendment

process to circumvent the three strikes rule."[53]  Mr. Brown had three strikes; our Court of Appeals

did not find Mr. Brown faced serious imminent danger when he filed the appeal, so it declined his

10

petition for *in forma pauperis status* and Mr. Brown then paid fees for the appeal.[54] Our Court of Appeals affirmed Judge Lancaster's dismissal of the amended complaint.[55] "Allowing [Mr.] Brown to allege unrelated claims against new defendants based on actions taken after the filing of the original complaint would defeat the purpose of the three strikes provision of the [Prison Litigation Reform Act]."[56] While our Court of Appeals allowed Mr. Brown to file a new action against the new defendants he added in his amended complaint, we decline to provide the same advice to Mr. Talbert. Mr. Talbert may sue Officer Ford relating to the early February and March 2019 conduct if he pays the fee as he is no longer allowed to proceed *in forma pauperis.*[57]

In *Williams v. Department of Correction*, Chief Judge Sleet denied the prisoner's motion to amend because he "raises new issues for acts that occurred after the filing of the original complaint and claims that do not appear in the original complaint or the amended complaint."[58] Mr. Williams filed an original complaint concerning medical issues and bunk assignment occurring in June 2018.[59] He later moved to amend his complaint to add negligence, incompetence, and sexual harassment claims which stem from March 2019.[60] While Chief Judge Sleet recognized our Court of Appeals "has adopted a liberal approach to the amendment of pleadings to ensure that 'a particular claim will be decided on the merits rather than on technicalities,'" he declined to allow Mr. Williams to include his amendments.[61] "The court will not allow [Mr.] Williams to add claims, unrelated in time or to allegations in the original complaint and its amendment. [Mr.] Williams has an available remedy by filing a new lawsuit."[62]

We deny Mr. Talbert an ability to end run our earlier Orders. His amendments regarding Commissioner Carney, Warden Delaney, Lieutenant Murray, and Officer Ford concern conduct in February 2019 and he filed his original complaint in April 2018 alleging false imprisonment for a period ranging from November 2017 through February 2018.[63] Mr. Talbert added these

11

amendments after our earlier dismissal to end run our April 5, 2019 Order in No. 19-1340 requiring him to pay if he wished to proceed.[64] We will not allow Mr. Talbert to benefit from adding these claims in the present *in forma pauperis* matter because it undermines our earlier dismissal of the same claims under the Prison Litigation Reform Act.

## B. Mr. Talbert may not plead claims concerning the November 2017-February 2018 transfer among facilities as finally adjudicated by the jury verdict.

Because we entered a final judgment Mr. Talbert may not amend his complaint as to Commissioner Carney and Wardens May and Clark. "As a general rule, once a judgment has been entered, a plaintiff is not allowed to amend his complaint unless the judgment has been 'set aside or vacated' under Rules 59 or 60."[65] We will not set aside or vacate the September 5, 2019 jury verdict in favor of Commissioner Carney and Wardens May and Clark. Mr. Talbert may not again amend his amended Complaint as to Commissioner Carney and Wardens May and Clark. These claims are finally adjudicated in this Court.

## III.   Conclusion

In accompanying Orders, we grant Officer Ford's motion to strike allegations against her and deny Mr. Talbert's motion to amend to add new allegations relating both to the issues tried before the jury as well as conduct in February 2019. Mr. Talbert may pursue claims relating to the conduct in February 2019 in a separate case upon paying the required fees.

---

[1] April 5, 2019 Memorandum in No. 19-1340 (ECF Doc. No. 5) ("Mr. Talbert has filed at least fifty-four lawsuits as a *pro se* litigant in this District since 2012. Several of his cases have proceeded beyond the pleadings stage. Several have been the subject of settlements with defendants but this Court has dismissed at least four of Mr. Talbert's civil actions as frivolous, malicious, or for failing to state a plausible claim for relief.").

[2] *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions,

while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").

[3] ECF Doc No. 61 at ¶ 10.

[4] *Id.* at ¶¶ 2-3.

[5] *Id.* at ¶ 11.

[6] *Id.*

[7] *Id.* at ¶¶ 4, 11.

[8] *Id.* at ¶ 12.

[9] *Id.* at ¶ 14.

[10] *Id.* at ¶ 15.

[11] ECF Doc. No. 51.

[12] ECF Doc. No. 58.

[13] ECF Doc No. 61 at ¶ 17.

[14] *Id.*

[15] *Id.*

[16] *Id.* at ¶ 20.

[17] *Id.* at ¶ 21.

[18] *Id.* at ¶ 22.

[19] *Id.* at ¶¶ 26-27.

[20] *Id.* at ¶ 28.

[21] ECF Doc. No. 109.

[22] *Id.*

[23] *Id.* at 5.

[24] *Id.*

[25] *Id.*

[26] ECF Doc. No. 167.

[27] *Id.*

[28] ECF Doc. Nos. 168, 172.

[29] ECF Doc. No. 143.

[30] ECF Doc. No. 112.

[31] *Id.*

[32] ECF Doc. No. 117.

[33] ECF Doc. No. 123.

[34] ECF Doc. No. 170.

[35] ECF Doc. No. 179 at 1.

[36] *Id.*

[37] *Id.* at ¶¶ 10-30.

[38] *Id.* at ¶ 31.

[39] *Id.* at ¶ 52.

[40] *Id.* at ¶¶ 55-72.

[41] *Id.* at ¶ 55.

[42] *Id.* at ¶ 56.

[43] *Id.* at ¶ 69.

[44] *Id.* at ¶ 72.

[45] *Id.* at ¶ 73.

[46] *Id.* at ¶¶ 55-77.

[47] *See* 28 U.S.C. § 1915(g); 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

[48] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001).

[49] *Id.* at 315.

[50] *Brown v. Blaine*, 185 F. App'x 166, 167 (3d Cir. 2006).

[51] *Id.* at 168.

[52] *Id.*

[53] *Id.*

[54] *Id.* at n.1.

[55] *Id.*

[56] *Id.* at 168-69.

[57] *See also Brown v. Lancaster*, No. 14-117, 2014 WL 1315996, at *1 (W.D. Pa. Apr. 1, 2014), *appeal docketed*, No. 14-2670 (3d Cir. May 8, 2014) (denying plaintiff's motion to amend his complaint, saying "to the extent . . . Plaintiff would identify unrelated theories of injury or harm, the proper course is not amendment, but rather, the filing of a new lawsuit").

[58] *Williams v. Dep't of Correction*, No. 08-367, 2009 WL 1649142, at *4 (D. Del. June 8, 2009).

[59] *Id.* at *1.

[60] *Id.* at *4.

[61] *Id.* (citing *Dole v. Arco Chem. Co.,* 921 F.2d 484, 486–87 (3d Cir.1990) (citations omitted)).

[62] *Id.; see also Daker v. Bryson*, No. 15-88, 2019 WL 826474, at *4 (M.D. Ga. Feb. 21, 2019), *appeal docketed*, No. 19-11212 (11th Cir. Apr. 2, 2019) ("limit[ing] the amendment of a prisoner's claims, particularly where—as here—the prisoner is attempting to raise claims that occurred *after* the filing of the original complaint") (emphasis in original); *Jackson v. Dayton*, No. 17-880, 2018 WL 4473403, at *10 (D. Minn. Apr. 2, 2018), *report and recommendation adopted*, No. 17-880, 2018 WL 3696600 (D. Minn. Aug. 3, 2018), *appeal docketed*, No. 18-3138 (8th Cir. Oct. 5, 2018) (denied claim joinder because defendant "could not bring the two claims unrelated to prison conditions via separate lawsuit given his restricted ability to file new lawsuits"); *Lee v. Grondolsky*, No. 16-12061, 2017 WL 3206937, at *3 (D. Mass. July 28, 2017), *appeal dismissed*, 2018 WL 851674 (1st Cir. Jan. 18, 2018) (denying plaintiff's motion to amend saying he "will not

be permitted to add new claims or new defendants, pertaining to allegations regarding facilities other than FMC Devens"—defendants originally alleged in the complaint); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (allowing a prisoner "to amend his complaint to include new, unconnected claims which have arisen since his initial filing defeats the purposes of filing fees and the 'three strikes' provisions in 28 U.S.C. § 1915(g).").

[63] ECF Doc. No. ¶ 8.

[64] ECF Doc. No. 6 in No. 19-1340.

[65] *Rhines v. United States*, 677 F. App'x 34, 36 (3d Cir. 2017) (per curiam) (quoting *Ahmed v. Dragovich*, 297 F.3d 201, 208 (3d Cir. 2002)).